## STATE v. MAGOON.

*Practice in the Order of the Admission of Testimony in Criminal Cases. Relation of the State to its Witnesses.*

In the trial of both civil and criminal cases, the order in which testimony shall be admitted is discretionary with the court rather than matter of strict right ; and error is not predicable on the exercise of that discretion, unless it is manifest that the excepting party has been thereby surprised or in some way put to legal disadvantage.

Although in the trial of criminal cases in this State the prosecution has generally been required to put in its whole case in the opening, and been confined in the close to testimony in rebuttal,—yet, that practice has never gone to the extent of rejecting in the close testimony tending to weaken the evidence on the part of the respondent because also tending to strengthen the testimony introduced by the prosecution in the opening.

The respondent claimed that P., whom the State introduced as a witness, was really guilty of the alleged murder, and introduced evidence showing that she had made threats against the murdered man, and had had a fight with him, and that she made statements on the morning of the discovery of the homicide, contradictory to her testimony. The court charged that as it was the duty of the prosecution to show to the jury everything that might shed light on the truth, it was its duty to produce P., that the jury might hear her story ; that the jury were to give it such credit as they thought it was entitled to ; and that if they discarded it, it should neither aid nor injure the case made by the State. *Held*, that it was to be presumed that the jury were charged that the State must prove the respondent guilty ; and that the charge was therefore not erroneous as leading the jury to disregard P's testimony as bearing on the question of her connection with the crime alleged.

INDICTMENT for the murder of Rufus Streeter. Plea, not guilty, and trial by jury, September Term, 1876, Washington County, REDFIELD, J., presiding.

It appeared that on the morning of October 15, 1875, the mangled body of the murdered man was found lying just over the fence, within a few feet of the main highway leading from Barre village to Orange, and on the land, and within a few rods of the dwelling-house, of Hannah Perrin. The prosecution claimed that he was killed by the respondent at between six and seven o'clock of the previous evening; and introduced evidence tending to show that there were marks of a struggle in the highway opposite the place where the body was found, and blood, and boot tracks apparently made by boots the heels of which were wholly or partially worn off, also marks indicating that the body had been dragged thence to the place where it was found.

It appeared that the respondent was arrested near his house in Orange on the day the body was found. The State introduced evidence tending to show that the respondent was then wearing a pair of old boots the heels of which were wholly or partially worn off, and that there were blood marks on the back side of the heel of one of them. No question was made but that the respondent was at Montpelier and Barre on the day of the homicide, nor but that he went to his house in the evening or night of the same day. The State claimed that he wore the boots that he had on when arrested to those places; but the respondent claimed that he wore rubber boots. To prove that he wore those boots, the State gave evidence of the admissions of the respondent on the occasion of his arrest, and introduced, among other witnesses to the same point, N. F. Averill, an officer who assisted in making the arrest, who testified that the respondent changed his clothes in his own bed-room soon after his arrest; that he thought he asked the respondent, as he put on each piece of his clothing, whether they were the clothes he wore on the previous day, and that he said they were, and said when he had got them all on, that he had got on everything he wore the day before " right through "; that he examined his boots, and that they were old boots, the heels of which were entirely worn off; that he would not swear that he asked him particularly if the boots he put on were the ones he wore the day before, but that he thought he did. There the State rested.

The respondent did not himself testify, and introduced no testimony as to the alleged admissions, nor as to what boots he had on when arrested, except that of his sons, Charles and Asa, who testified that he wore a pair of rubber boots to Montpelier and Barre. As to that point the respondent then rested. The State then offered in rebuttal, as to the respondent's alleged admissions, the testimony of Elondas Hood, who testified that he was present when the respondent changed his clothes ; that Averill asked the respondent " if those were the clothes and the boots he wore the day before," and that " he said they were." The respondent seasonably objected to the admission of Hood's testimony, for that the respondent had introduced no evidence as to his admissions, nor as to the boots he had on at the time of his arrest, except the testimony of said Charles and Asa, and for that the rule in criminal cases in this State does not allow evidence to be accumulated on a point made by the State in the opening, but confines the State " to the same rebuttal that it would be confined in pleading," and does not allow evidence in rebuttal that is allowed in civil cases. But the testimony was admitted ; to which the respondent excepted.

The testimony on the part of the State being circumstantial, the respondent insisted that he was not present at the alleged murder, and was in no way connected with it; and claimed that the said Hannah, who was introduced as a witness by the State, was in fact the guilty party ; and he introduced testimony showing that she had made threats against the murdered man, and on one occasion had had an altercation and fight with him, and that she made statements on the morning of the discovery of the homicide, contradictory to those of her testimony. But the court charged in reference thereto as follows :

In bringing evidence of a crime before a court and jury, it is the duty of the government attorney to bring everything that he thinks may shed true light upon the subject. And while in a civil case if a party responsible brings false testimony, it should and does prejudice the court and jury against the whole character of his claim, yet in a case of this kind, which is a grave crime, and one that invites your utmost scrutiny to maintain on the one side all the rights and safety of the public, and on the other side to

guard well all the rights of the accused, it is the duty of the state's attorney—and so far as this case discloses it has been followed out—to show to the jury all that may shed light on the transaction, leaving it for them to weigh it and decide how far it is credible—how far it does tend to shed light on the truth. Comments have been made upon ·Mrs. Perrin. It was perfectly proper— would have been on either side. It was the duty of the government to produce her here before the jury, that you might hear her story, and give just such credit to it as in your experience you think it is entitled to ; and if you discard it wholly, it neither aids nor injures the case made by the State. If it discloses, so far as the facts come out, that this witness may have had a connection with the murder, that is to be weighed. She is not on trial ; and while you are to weigh all declarations that she has made in connection with her acts in qualifying those acts, yet a naked declaration only goes to impair and impeach her testimony. In this case she made declarations inconsistent and contradictory. Well, they may be so many and so repeated that you put no credence at all in her as a witness, or you may say that, being arrested and excited, the murder being upon her own land and farm, that she might have been so excited, with every one inquiring of her, that she admitted and then denied, and her contradictory statements may be referred properly to her condition, and in some part qualified by the condition she was placed in. It is all a matter for you.

To the charge as given the respondent excepted. Verdict of guilty of murder in the first degree.

*Heath & Carleton*, for the respondent.

The case shows that the defence introduced no evidence as to the admission, and no evidence as to the boots, except that respondent wore to Barre and Montpelier the day of the homicide a pair of rubber boots ; and we insist it was error in a criminal case to allow the State to introduce further and additional testimony—strictly *cumulative testimony*—as to said admissions.

The testimony objected to was cumulative, and therefore erroneously admitted. *Parker* v. *Hardy*, 24 Pick. 246 ; *Bradish* v. *State*, 35 Vt. 452. The rule of practice in this State allowing the party having the affirmative to make a *prima facie* case in the opening, and then if impeached to strengthen his case by general testimony, does not apply to criminal cases. 1 Archb. Crim.

State *v.* Magoon.

Pl. & Ev. 576, n., 585; *Rex* v. *Stimpson*, 2 C. & P. 415; *Rex* v. *Hilditch*, 5 C. & P. 299.

The charge was erroneous. The evidence introduced by the respondent as to Hannah Perrin was evidence in chief in favor of the respondent, tending to show that another was in fact guilty of the homicide.

The jury must have understood from the charge that Mrs. Perrin's contradictory declarations could only be weighed by them to impeach her testimony as a witness for the State. They were misled by the following portion of the charge: "It was the duty of the government to produce her here before the jury, that you might hear her story, and give just such credit to it as in your experience you think it was entitled to, and if you discard it wholly, it neither aids nor injures the case made by the State."

*Frank Plumley*, state's attorney, for the State.

The evidence of Hood was properly admitted in rebuttal of the respondent's sons.

It was also admissible because no such rule as claimed by the respondent exists in this State. *Forbes* v. *Davison*, 11 Vt. 660. But if there is such a rule it is a rule of practice whose application is discretionary with the court, and is not to be disturbed on exceptions unless grave and manifest wrong result. *Pingry* v. *Washburn*, 1 Aik. 264; *Clayes* v. *Ferris*, 10 Vt. 112; *Goss* v. *Turner*, 21 Vt. 437; Saund. Pl. & Ev. 1100; Steph. N. P. 1802; Roscoe Crim. Ev. 79; 1 Stark. Ev. 151, n. k; *Dare* v. *State*, 22 Ala. 23; *Kalle* v. *The People*, 4 Park. Cr. (N. Y.) 592; *Sartonius* v. *State*, 24 Miss. 602, 608; 5 Mo. 71, 81; 2 Phil. Ev. 17; 2 Rus. Crimes, 588; *Rees* v. *Smith*, 2 Stark. 31; *Curar* v. *Sodo*, 1 Moody & M. 85; *State* v. *Bridgman*, 49 Vt. 202; *State* v. *Mann*, 31 Conn. 572; 1 Best Crim. Proceed. s. 966.

The charge was correct. *Stevens* v. *Talcott*, 11 Vt. 25; 2 Rus. Cr. 634; 2 Brod. & B. 297, 298.

The opinion of the court was delivered by

Ross, J. I. The respondent's first exception is to the admission of the testimony of Elondas Hood, on the ground that it was

not strictly rebutting to the testimony introduced in. defence ; and that if it did tend to rebut that testimony, it also tended to strengthen and confirm the case as made by the prosecution in the opening, and for that reason was not admissible under the rule regulating the admission of testimony in criminal causes. The exception assumes that the prosecution in its close is limited to the introduction of strictly rebutting testimony, and that in this respect it has not the same right which a plaintiff has in a civil cause. In the trial of both civil and criminal causes, the order in which the testimony shall be admitted is one of practice rather than of strict right, and may, in the discretion of the court, be varied, to meet the exigencies of a given case, without error being predicable thereon, unless it is manifest that the variance has operated to surprise, or in some way work a legal disadvantage to, the excepting party. Archb. Crim. Pr. & Pl. 576; *Pingry* v. *Washburn*, 1 Aik. 264; *Clayes & Morse* v. *Ferris & Higbee*, 10 Vt. 112 ; *Goss* v. *Turner*, 21 Vt. 437 ; Bishop Crim. Proceed. s. 966.

This exception might be disposed of on this ground alone, inasmuch as it does not appear that the court did not exercise its discretion in admitting the testimony of said Hood ; neither does it appear that the respondent was surprised or put to disadvantage by its allowance. He could not well have been surprised or put to disadvantage, as Hood testified to the respondent's admissions ; and all the persons present when the admissions were made, so far as is disclosed by the exceptions, had been previously called by the prosecution. The respondent, the only other witness present, was in court—knew whether he made the admission—and could have availed himself of the privilege of testifying in regard thereto if he chose.

It is true that the courts of this State in the trial of criminal causes have generally, but not universally, required the prosecution to put in its whole case in the opening, and have confined it in the close to testimony which tended to rebut the testimony of the respondent. We apprehend that this practice, so far as it varies in this respect from that which obtains in civil cases, has been adopted rather out of tenderness to the respondent, and that be-

fore entering on his defence, he might be fully apprised of the case which he had to meet, than because he could of right demand it. But neither in this State nor county, so far as we are aware, has it ever been pushed to the extreme of rejecting in the close, testimony which legitimately tended to weaken the effect of the testimony adduced by the respondent because it also tended to strengthen and confirm the testimony introduced in the opening by the prosecution. We think the testimony of Hood was rebutting, within the practice which prevails in this State and in this country, and also within the common-law rule as generally understood and applied by the courts of England. It tended to weaken the testimony introduced by the respondent. Nor was its character as such affected, nor the right of the prosecution to introduce it in the close taken away, because it also tended to strengthen and confirm the testimony of Averill in regard to the same admissions, introduced by the prosecution in the opening. This exception, therefore, was not well taken, and is overruled.

II. The respondent also excepted to the charge of the court as detailed, and complains particularly of that sentence in regard to Mrs. Perrin's testimony in which the court says : " And if you discard it wholly, it neither aids nor injures the case made by the State," on the ground that, as the testimony tended to show that she might have been guilty of or had some connection with the murder, the respondent had the right to have her testimony weighed in that light, and thus, indirectly, to show that he was not guilty of the homicide, and that this sentence of the charge would either exclude, or turn the attention of the jury from, such consideration of her testimony, and so mislead them, to the respondent's injury. We do not think the portion of the charge excepted to is fairly open to this construction or criticism. It is to be assumed that in other portions of the charge the court had instructed the jury that the State must prove the respondent guilty of the murder, and also that the jury are possessed of ordinary sense in appreciating the use of language as the means of communicating ideas. From the portion of the charge included

in the exceptions, it is manifest that the respondent's counsel had argued to the jury that Mrs. Perrin, by reason of her contradictory statements and threats, quarrels, and previous relations with the murdered man, was not to be credited as a witness, and that the prosecution was to be prejudiced because it had called and used a witness of such a character. It was to countervail and set this matter right before the jury that the instruction complained of was given ; and it must be construed, as the jury must have understood it, with reference to the occasion that called it forth. The court properly directed the attention of the jury to the difference between the relation which the State sustains to the witnesses called and used by it and that of a party. When a party introduces and uses a witness without being compelled thereto by some rule of law, he impliedly assumes and vouches for the credibility of the witness, and is therefore justly prejudiced if he uses a witness of disreputable character as to credibility. But in criminal prosecutions, the State is bound to produce and use all witnesses within reach of its process, of whatever character, whose testimony will throw light upon and characterize the transaction under inquiry, whether it tends to convict or acquit the respondent ; and hence it is not to be prejudiced by the character of the witnesses it produces and uses. The public, in whose interest the prosecution is carried forward, has as much interest in establishing the innocence of the respondent if he be innocent, as his guilt if he be guilty. In propounding this duty and its effect, the court, both before and after the sentence particularly complained of, told the jury it was their duty to weigh all the testimony, determine its credibility, and how far it tended " to shed light on the truth." It was in this connection, and while elucidating this duty of the prosecution, that the court told the jury that they were to determine the credibility of Mrs. Perrin as a witness, and if they found her without credibility, and so discarded her testimony wholly, the fact that they discarded it, though she was produced and used by the State, should neither aid nor injure " the case made by the State." The court very properly in the same connection called the attention of the jury to the fact that Mrs. Perrin's relation to the case was that of a witness and not that of a

respondent, and hence that her inconsistent and contradictory declarations, except when made in connection with some act— and as giving character to that act—which implicated her with the transaction under investigation, could be weighed only as affecting her credibility as a witness. There is no error apparent in the portion of the charge excepted to. The respondent reserved no other exceptions.

Respondent's exceptions are overruled, and judgment rendered that he take no benefit from the same.