### State of Vermont v. Michael Tatko

[128 A2d 663]

Special Term at Rutland, November, 1956.

Present: **Jeffords, C. J., Cleary, Adams, Hulburd and Holden, JJ.**

Opinion Filed January 2, 1957.

460

*James F. Sennett* and *Joseph M. O' Neill* for the respondent.

*Earle J. Bishop*, State's Attorney, for the State.

**Holden, J.** By a verdict returned at a session of the Rutland municipal court, the respondent Michael Tatko was found guilty of taking a female deer on November 20, 1955 in violation of V. S. 47, §6493 as amended by the Acts of 1955. This act, as amended, permits the taking of one wild deer with antlers not less than three inches in length during the regular deer season, the sixteen day period commencing on the second Saturday in November of each year. By Chapter 279 of the Vermont Statutes, Revision of 1947, the shooting, hunting or killing of a female deer as game during such season constitutes a criminal offense. The respondent presents two exceptions to his conviction. Although judgment was entered on the verdict of the jury, imposition of sentence was stayed and the cause passed to this Court for review.

The respondent assigns error to the action of the trial court in the admission of evidence and in denial of his motion for a directed verdict of acquittal. The latter exception challenges the substance of the proof presented against the respondent, and we are required to test the evidence in its aspect most favorable to the State, *State* v. *Hart*, 119 Vt 54, 55, 117 A2d 387; *State* v. *Boudreau*, 111 Vt 351, 360, 16 A2d 262; and free from the force of modifying evidence, *State* v. *Perras*, 117 Vt 163, 164, 165, 86 A2d 544; *State* v. *Wooley*, 109 Vt 53, 63, 192 A 1.

The alleged offense occurred in the Cold Hollow section in the town of Wells. On November 20, 1956 this hunting ground

was covered with light snow. The respondent and three companions had entered the general area in the early afternoon, and shortly separated in different directions. Into the same general area, one Strobridge, a state game warden and two hunting companions, Hopson and Jones arrived soon thereafter, and separated. Strobridge took up a position along a runway in a draw nearby a thick belt of pines. From this observation post, Strobridge observed two fawn without horns, enter and disappear up the draw. Shortly, three deer without antlers entered the draw from the northwest, circled under the pines at a distance not more than forty feet from the warden and disappeared through the pines in a southeasterly direction. A second or two after they went out of sight, Strobridge heard a rifle shot from his southeast. He immediately took off through the pines in a course parallel to that taken by the three deer. Two more rifle shots were heard before the witness reached an open area. From the open area, he observed the respondent standing 200 feet to his south with his rifle at his shoulder, barrel pointed north. The rifleman's body jerked backward and a puff of smoke was emitted from the muzzle of the rifle, with an instantaneous rifle report from his direction. The respondent then proceeded from his firing position in the direction of his aim, with his rifle at the ready position. As the warden moved out to meet him, he was observed by the respondent. The respondent changed his course immediately to the southwest. The warden intercepted the respondent. Upon inquiry about his luck, the respondent replied he "missed him", stating he had fired on a spikehorn but knew he didn't hit him. The officer examined the respondent's license and took the calibre and serial number of his rifle. After declining the officer's suggestion that they look further in the new snow, Tatko departed from the scene. During the trial, Tatko testified that he had seen and fired on a spikehorn in the pines at a range between two and three hundred feet, and although he had fired about fifteen minutes before he was intercepted by the officer, he was tracking the target he had fired on when confronted by the warden.

The warden, joined by Hopson and Jones, picked up the tracks of the three deer without antlers that he had observed disappear into the pines, just prior to hearing the first rifleshot.

Trailing them through the pine, the tracks of one animal departed from the other two at the edge of the pines. Just beyond the end of the growth of pines and to the south, this track ended at a place where a doe lay fallen in the snow. Blood, steaming in the cold air, was flowing from the animal's nostrils and mouth. The carcass was still warm. The animal had been shot through the neck from the right, through the left side. The deer fell in the line of fire of the respondent's rifle at the time it was observed firing. In the pines, seventy feet north of the point where the doe was found, a bullet had creased a furrow in the snow, three feet in length. Line of sight south along this furrow traversed the point on the ground from which Tatko fired. A search at this point uncovered no empty cartridge cases; however, the area was covered by a six inch growth of ground pine topped by new snow that had been penetrated in many places as snow fell from the overhanging branches.

The first exception for our review relates to the testimony of Warden Strobridge received on his redirect examination by the State's Attorney. He was the first witness to testify at the trial. By direct examination of this witness, testimonial proof was received relating to his observation of the three deer without antlers, their direction of travel from his observation, his observation of the respondent firing his rifle and his discovery of the fallen animal. During his cross examination, respondent's counsel inquired of his observation of the direction the respondent faced when he fired, the discovery of the protected game, the nature of the bullet wound inflicted. He concluded the cross examination with the question, "Do you want this jury to understand that you definitely know that Michael Tatko shot that deer?" The witness answered "No." The redirect examination followed:

> "Q. By your answer to that question you say you do not definitely know, you didn't see it shot?
>
> A. That's right.
>
> Q. At the time you saw Mr. Tatko fire his rifle, you didn't see any deer.
>
> A. That is correct.

Q. This deer that you found, can you tell us where it was in relation to the direction in which his rifle was pointed when he fired.

Mr. O'Neill: We object. This is not redirect examination of this witness.

The Court: Receive the answer. You may have an exception.

A. It was in the same line.

Q. What do you mean?

A. The same direction. He had his rifle pointed in a northerly direction and the deer was right over in that area."

Although there were facts in the testimony that preceded, from which inference could be drawn to locate the doe in the general line of the respondent's fire, no previous question had been directed specifically to this alignment. To the ruling of the trial court the respondent claims abuse of discretion to his prejudice.

■ Orderly judicial procedure requires proper observance and due regard for accepted rules established to govern the conduct of trials in court. And it has frequently been stated that the primary office of redirect examination is to meet what has been developed on cross examination, to explain away any tendency to discredit what may have been achieved on cross examination. It also has a proper function to clarify obscurities that may arise, even though in the strictest sense not directly explanatory or relevant to matters developed on cross examination. *State* v. *Fairbanks*, 102 Vt 283, 285, 288, 147 A 682. Such rules for the introduction of evidence serve well the conduct of the trial, but they do not have the effect of conferring a right upon the parties litigant to any established pattern. *State* v. *Magoon*, 50 Vt. 333, 338. They yield to the sound discretion of the trial judge when the circumstances demand it. This Court, early in its reported cases, recognized that rigid adherence to such rules, under the varying situations that might arise in

haste or confusion of a hard fought trial, might lead to unjust results and disastrous consequences. Sufficient flexibility has been preserved in the control of the order of proof and the examination of witnesses to compensate for honest misjudgment and inadvertent omissions that can and do occur in direct examination of witnesses. *Goss* v. *Turner*, 21 Vt 437, 439; *State* v. *Magoon, supra;* 6 Wigmore on Evidence §1867 at 498.

■ The application of the rule or the departure from it will not be disturbed unless an abuse of discretion, to the prejudice of the party opposing, requires it. *Ranney* v. *St. J. & L. C. RR.*, 67 Vt 594 at 599, 32A 810; *Packard* v. *Quesnel*, 112 Vt 175, 184, 22 A2d 164.

■ The redirect questioning before us might well have had the effect of clarifying evidence that preceded it in the order of proof. Even without that effect, it was proper for the court to permit the State to take this occasion to supply a relevant fact in the chain of proof, previously overlooked. No unfair surprise is claimed by the excepting party and no unfair advantage to the offering party was indicated to the trial judge. None is indicated to us. Prejudice is not presumed; it must be manifest or established by the party claiming it. *State* v. *Bissell*, 106 Vt 80, 96, 170 A 102. No error in the discretionary ruling of the trial judge appears.

■ In support of the remaining exception to the failure of the trial court to direct an acquittal, the respondent contended in oral argument and in his brief that the evidence relating to the line of sight across the path of the projectile from the bullet furrow in the snow to the point where Tatko stood at the time he was seen discharging his rifle was not properly before the court. This argument is predicated on the proposition that the witnesses Hopson and Jones who testified to the alignment did not see the respondent fire, therefore, their testimony on this point was inadmissible as hearsay. Whether these witnesses acquired their knowledge of the firing position from evidence of Strobridge or whether it came from tracking back on Tatko's footprints in the snow from the point where Hopson and Jones observed him talking with Strobridge, or from both sources,

does not clearly appear from the transcript. The transcript of the testimony does clearly indicate that the entire subject matter of this fragment of the proof was received first in the direct and cross examination of Hopson, and the subject was followed in direct and cross examination of Jones, all without objection from the respondent. It was not until the redirect examination of the last witness Jones that any opposition was directed to this line of proof, and then it was not accompanied by any motion to strike the proof previously received without objection. Even though this testimony may have been infected with hearsay, its probative force had already been applied, unopposed, and such evidence admitted without objection was properly for consideration by the court and the jury. *Streeter's Dependents* v. *Hunter*, 93 Vt 483, 484, 108A 394; *Montpelier* v. *Calais*, 114 Vt 5, 11, 39 A2d 350.

In support of this exception, the respondent further maintains that all of the evidence upon which the conviction was founded was entirely circumstantial, that as such, it failed to exclude every reasonable hypothesis consistent with the respondent's innocence, and therefore could not sustain a verdict of guilty, citing *State* v. *Marston*, 82 Vt 250, 72 A 1075. In holding that an instruction to the jury to this effect was not necessary on the facts then before the trial court, the Court stated, "An instruction of this nature, if ever essential in this jurisdiction, is required only in cases where the evidence is entirely circumstantial." *State* v. *Marston*, *supra* at 251. Sometimes circumstantial evidence rises to such quality as to assume character positive and direct, obscuring the normal distinction between testimonial evidence and circumstances. "The line between direct and circumstantial evidence is at times most shadowy." *State* v. *Wooley*, 109 Vt 53, 59, 192 A 1, 3. So it is here as to some of the facts in support of the State's position. The detailed detonation of the cartridge by the respondent, and the kill of the protected game itself, strictly speaking, are incapable of exact human observation but are made unequivocally manifest by circumstances observed. Without further delineation, the fabric of the proof, constructed from all the multiple circumstances considered in their entirety, takes on a

quality stronger than mere suspicion and conjecture. The evidence in the light most favorable to the State permits of a reasonable finding that the respondent fired a rifle shot at a deer in the pines nearby where the doe was found and from whence she had come. The doe was killed by rifle fire. The path of the projectile that furrowed the snow to the north of the target was in line from the point where the respondent was observed taking aim and where his rifle gave evidence of discharge. The time, space and directional factors are consistent with the reasonable and fair conclusion that the respondent shot the doe that was found freshly killed in the snow. There are other circumstances with probative force including the action of the respondent following the observed rifle fire. Each circumstance tempers the other to develop proof of sufficient substance to sustain a finding of guilty in the minds of just and reasonable triers of the facts. No error appears in the action of the trial court permitting the jury to resolve, by their verdict, the truth of the charge presented.

The ruling was supported by evidence fairly and reasonably establishing that an offense was committed and that the respondent was the offender. It was sound in law, tested by the rules secured in our cases. *State* v. *Pierce*, 103 Vt 383, 387, 154 A 675; *State* v. *Wooley*, 109 Vt 53, 63, 192 A 1; *State* v. *Boudreau*, 111 Vt 351, 353, 361, 16 A2d 262; *State* v. *Perras*, 117 Vt 163, 167-168, 86 A2d 544; *State* v. *Hart*, 119 Vt 54, 57, 117 A2d 387.

The respondent's exceptions are without merit. *Judgment is affirmed and the cause remanded.*