## In Re Will of Clara Belle Montgomery

[162 A.2d 344]

November Term, 1959

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed January 15, 1960

*John R. Mollica and John A. Swainbank* for the proponent.
*Richardson & Caldbeck* for the contestants.

**Barney, J.** The proponent, appellant here, sought to have a lost will admitted to probate. At the close of all of the evidence the county court ruled that the proponent had failed to sustain the burden of proof that this instrument was the will of Clara Belle Montgomery and in full force and effect, unrevoked, at her death. A verdict was directed in favor of the contestants, appellees here, to which ruling the proponent excepted. This exception constitutes the sole ground of his appeal.

Ever since *Minkler* v. *Minkler's Estate*, 14 Vt. 125, it has been the law of this state that the absence, at the death of a testator, of a will known to have existed in his possession in his lifetime raises a presumption of revocation. The burden is on the proponent of the lost will to overcome this presumption by proof of non-revocation.

In the case at hand the trial court ruled that the proponent of the lost will had not introduced sufficient evidence fairly and reasonably tending to show that there was no revocation to make an issue of fact for submission to the jury.

Since the burden rested on the proponent to establish non-revocation of the will in question, the directed verdict followed.

In passing on the directed verdict we must examine the evidence in the light most favorable to the proponent and determine whether or not there is any substantial evidence fairly and reasonably tending to disprove revocation. If there is, the question was for the jury. *Benoit* v. *Marvin*, 120 Vt. 201, 203, 138 A.2d 312. The effect of modifying evidence is to be excluded. The tendency of the evidence and not its weight is to be considered. Contradictions and contrary inferences are for the jury to resolve. *Fletcher* v. *Manning*, 118 Vt. 240, 241, 105 A.2d 264.

The evidence in this case is substantially undisputed. In 1955 Clara Belle Montgomery made a will providing for her mother, with her brother Donald taking the remainder. This will was left with Attorney Clifton Parker of Morrisville, Vermont. On September 9, 1957 she executed another will leaving $100.00 to Donald and giving her brother Nield and his wife Agnes the residue. Donald and his wife Alberta were residents of Florida. Nield and his wife resided in East Hardwick, Vermont, about half a mile from the residence of Clara Belle. The contents and execution of the 1957 will were established through the testimony of Attorney John Mollica, who drafted the will, and by the testimony of subscribing witnesses. At the time the will was executed it was delivered to the testatrix. It is this will that has never been found.

The proponent put in evidence of statements by the testatrix as to the whereabouts of this will. In June, 1958, she said that the will was in her strong box. In October, 1958, she said it was in her safety deposit box in the Danville bank. When she opened her safety deposit box in the presence of her guardian she said the will was at home, and three or four days later she told the guardian she had destroyed it. Her guardian was Craig Montgomery, son of Nield and Agnes. He was appointed in June, 1958 as a consequence of illness of the testatrix which required hospitalization and prevented her from carrying on her own affairs. The appointment was made with her consent although she had previously refused to consent

to the appointment of the person named executor in her 1955 will.

The proponent also offered other statements by the testatrix in refutation of revocation. In December, 1957 she stated to Agnes, wife of Nield, "Don and Al think they are going to get everything but you and I know differently, Agnes." In April, 1958 Agnes related to testatrix that a wealthy aunt had died and left Agnes one hundred dollars, whereupon testatrix commented, "I would never do such a thing to you." She also said, "Agnes, you will never sell my things at auction, will you?"

Craig Montgomery, her guardian, testified that three days before her death testatrix requested that he obtain her 1955 will from Attorney Parker's office. This he was unable to accomplish before her death on December 9, 1958. After her death a search of the safety deposit box, the strong box, the house and among her personal effects failed to turn up the 1957 will.

Testamentary dispositions are, in the law, hedged about with devices to prevent, as far as possible, fraudulent intrusion upon the planned dispositive pattern of the testator. Inevitably, the one person who best knows his own intentions cannot be present to see that they are carried out. Among these devices are various presumptions, such as the one which has the effect of placing the burden of proof on anyone who seeks to establish any testamentary instrument, whether available or lost. In the case of a lost will the burden of showing that it was not revoked is placed on the proponent. The fact that the will cannot be found is regarded as tending to show that the testator destroyed the instrument with the intent of revoking it. This is treated as a presumption, and, as has been said previously, may be refuted by proper evidence. *Minkler* v. *Minkler's Estate, supra*, 14 Vt. 125, 128; see also *Dudley* v. *Executors of Wardner*, 41 Vt. 59; and see annotations, 3 A. L. R. 2d 949 et seq.

The oral statements of the testatrix introduced as part of the proponent's case concerning matters relating to her testamentary dispositions were received without objection. They were, therefore, properly for the consideration of the

trial court. *State* v. *Tatko*, 119 Vt. 459, 465, 128 A2d 663. By this evidence, the proponent has more than the presumption to overcome. The guardian testified that the testatrix told him that she had destroyed the 1957 will. The fact confirms what the law presumes. The question then remains as to whether the other evidence proferred by the proponent sustains his position. Certainly any inferences that may be drawn from the other statements of the testatrix with respect to affirming the 1957 will are extremely tenuous. More than that, so far as the evidence discloses, these statements seem to have preceded in time the revelation to the guardian that the 1957 will had been destroyed. In other words, these statements to Agnes cannot refute a revocation subsequent to those conversations. Taking the evidence in that light there are no contradictions or contrary inferences representing substantial evidence tending to disprove revocation. It is axiomatic that the law favors that view of the evidence which reconciles apparent conflicts in the evidence without taking any statements as necessarily false. Certainly no substantial evidence has been pointed out tending to disprove revocation relating to a time subsequent to the testatrix's declaration of destruction of the 1957 will. The proponent's evidence is not sufficient to support a verdict in his favor. That being so, the verdict was properly directed in favor of the contestants. *Peterson* v. *Post*, 119 Vt. 445, 451, 128 A.2d 668; *Perkins* v. *Vermont Hydro-Electric Corp.*, 106 Vt. 367, 399, 177 A. 631.

■ There is a suggestion in the proponent's presentation here that revocation by the testatrix was barred by her lack of capacity due to her mental and physical state. Here, again, the burden of showing incapacity rested on the proponent. His evidence falls far short of a showing that at any and all times when his revocation by destruction may have occured there was a lack of capacity in the testatrix. Indeed, his own brief refers to the intermittent nature of her disability, if it amounted to disability at all. This contention also fails for lack of sufficient proof. *Lyons* v. *Bloodworth*, 199 Ga. 44, 48, 33 S. E.2d 314; *Watkins* v. *Watkins*, 142 Miss. 210, 234, 106 So. 753, 757; see also annotations, 3A.L.R.2d, *supra*, at 985.

No error appears.

*Judgment affirmed.*