# State of Vermont v. Robert Eugene Dragon, Jr.

[268 A.2d 913]

No. 139-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed August 14, 1970

*James M. Jeffords,* Attorney General and *William T. Keefe,* Assistant Attorney General, for Plaintiff.

*Frederick J. Glover,* Ludlow, for Defendant.

**Smith, J.** This is an appeal from a jury verdict of guilty returned to the Vermont District Court, Chittenden Circuit Unit No. 2, Burlington, Vermont, in the County of Chittenden, on the 14th day of August, 1969, and from the court's ruling which denied the respondent's motion for a directed verdict both at the close of the State's evidence and again at the conclusion of the respondent's case.

The respondent's requests for a directed verdict of acquittal were that the evidence, taken most favorably to the State, disclosed that it was the respondent who was first struck in the fracas by Gagnon, that the State failed to prove beyond a reasonable doubt that the respondent did not act in self-defense.

The factual situation which existed before the encounter between Dragon and Gagnon is in little dispute. Gagnon, Barbara Barrows, Raymond Lovejoy, Robert Rheaume, together with Mr. and Mrs. James Rheaume, had been spending a good part of Sunday, September 8, 1968, at a place called the Gateway in social relaxation, a relaxation possibly aided by the admitted consumption of considerable amounts of liquid refreshment. Around midnight, the group of merrymakers all came to the James Rheaume residence for a further continuation of the festivities.

The respondent, with his brother Clifton, drove up to the Rheaume residence at some time while the party was taking place and was met by Bernard Gagnon. It was then that the encounter took place that led to this prosecution.

While the respondent did not take the stand in his own defense, the alleged victim, Bernard Gagnon, did testify as a witness for the State, as did other persons who were present at the Rheaume home at the time of the encounter.

All the direct evidence in the case, produced by the State, was that Gagnon struck the original blow that caused the fight between him and the respondent. In fact, Gagnon, the victim of the fray, so testified. As the State brought out by means of pre-trial statements given by the witnesses, including Gagnon, this testimony was directly contrary to statements which these

witnesses had given to State Police officers during the investigation of the affair, as well as to pre-trial accounts of the fight given to others.

■ It is the contention of the State that the undisputed fact that Gagnon had in pre-trial statements declared that the respondent struck the first blow, that such admissions, at variance with his testimony, serve not only to impeach him, but also as evidence that the fact was as first admitted. Such is the rule when a party to a case, as in a civil action, makes an admission at variance with his testimony. *Hall* v. *Royce,* 109 Vt. 99, 108, 192 Atl. 193.

■■ But it was the State of Vermont and Robert Dragon who were the parties in the instant case, and Mr. Gagnon was only a witness. A witness, not a party, may be impeached by giving in evidence statements made by such witness, at a former trial or elsewhere, which are inconsistent with his testimony, the foundation of such impeachment having first been laid by calling the witness' attention to the claimed statement and questioning him about it. Such statements are impeaching statements only, and when the witness is not a party, are not evidence to prove the fact to be as stated. *Bennett* v. *Robertson,* 107 Vt. 202, 212, 177 Atl. 625.

■ The State is not bound by the witnesses it calls in a criminal case. But it is bound by the same rules of evidence upon the testimony which it produces through its witnesses, whether they be friendly or hostile. Viewing the evidence in the light most favorable to the State such evidence is undisputed that the respondent did not strike the first blow.

■ In such circumstances, the respondent had the right to use sufficient force to repel the attack made upon him by Gagnon.

"The rule as to the right to use force to repel an assault and battery is that the assailed may beat his assailant so far as to make him desist; but he cannot inflict great bodily harm or take the life of the assailant, unless he reasonably apprehends death or great bodily harm to himself, and then he may not do so if he has other means of avoiding the assault that appear to him at the time as sufficient and available, and which are in fact sufficient

and available. . . ." *State v. Rounds,* 104 Vt. 442, 450, 160 Atl. 249.

The testimony is undisputed that when Gagnon was brought to the Middlebury Hospital, and from there to the intensive care unit at the Mary Fletcher Hospital in Burlington, that he was suffering from critical injuries, including a ruptured liver, multiple fractures of the right ribs and abdominal bleeding and was in a state of shock. While Mr. Gagnon, in his statements to the State Police officers and to the attending physicians, stated that such injuries occurred to him because of being severely kicked by the respondent while he was in a semi-conscious condition on the ground, with the respondent standing over him, he repudiated such statements in his testimony at the trial.

On the witness stand, Gagnon denied he was kicked by the respondent, and claimed his severe injuries resulted from two falls that occurred after the fight, and at a time after the respondent had left the scene. His testimony as to the falls was corroborated by several other witnesses who were members of the party at the Rheaume residence on the night in question.

However, one witness, Mr. Lovejoy, who had given a previous statement to state officials, although very reluctant to do so, eventually admitted that his previous statement had been truthful, and he repeated such statements in direct testimony. It was Lovejoy's testimony that Dragon, the respondent, had kicked Gagnon repeatedly while Gagnon was on the ground in a semi-conscious condition, and at the same time telling Gagnon he woud kill him. It was in the car of this witness that Gagnon was taken to the hospital.

Again, viewing the evidence in the light most favorable to the State, we think that the testimony of Lovejoy raised a substantial question of whether the respondent had not only so badly beaten his assailant as to compel him to desist, but had used unnecessary force and violence at a time when he was not in fear of bodily injury.

"Since this evidence tended to show that the respondent was first assaulted, the burden was upon the State to prove beyond a reasonable doubt that the acts of the respondent were not done in self-defense. The amount of

force which one may justifiably use in self-defense is such as reasonably appears to him to be necessary under all the circumstances, and whether he is justified in the particular occasion depends upon whether the jury find that it reasonably appeared to him that it was necessary to use the force that he did use. . . ." *State* v. *Wilson,* 113 Vt. 524, 527, 37 A.2d 400.

It would be an understatement of the facts to say that in the instant case there was a wide discrepancy between what the witnesses testified to in direct testimony and what was contained in the pre-trial statements they had given. But viewing the evidence as given on the witness stand as evidence to. prove the facts stated, and the pre-trial statements as admissible only for impeachment purposes, there was still a substantial question here for the determination by the jury.

█ In view of the serious injuries received by Gagnon, and the conflicting statements upon the producing cause of such injuries, we think as did the lower court in denying the motions of the respondent, that it was for the jury to determine whether such injuries were inflicted by the respondent upon Gagnon by the use of force not rendered necessary for his self-defense.

█ The charge of the lower court, to which no exception was taken, was, in effect, that the amount of force which one may justifiably use in self-defense is such as reasonably appears to be necessary under all the circumstances in the case. *State* v. *Rounds,* 104 Vt. 442, 451, 160 Atl. 249.

*Judgment affirmed.*