**State of Vermont v. Thomas E. Durling**

[442 A.2d 455]

No. 219-80

Present: **Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.**

Opinion Filed December 4, 1981

Motion for Reargument Denied February 3, 1982

*John A. Rocray,* Windham County State's Attorney, Brattleboro, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, and *Ruth A. Wishik,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Barney, C.J.** The defendant was convicted of the crime of unlawful trespass under 13 V.S.A. § 3705(c) after trial by jury. He brings this appeal, claiming numerous trial errors.

The factual background begins with a startled Brattleboro citizen being aroused from bed at about four o'clock in the

afternoon when the bedroom window over his head opened and someone wearing a blue jacket with a fur trimmed hood stuck his head into the room. The window opened not to the outdoors but into a shed adjoining the room, and through it the bedroom occupant was able to see two people, and hear the intruder say to another person something to the effect that, "I think somebody's home." Upon a challenge by the occupant, the intruder claimed to be from the power company, then left.

The occupant went downstairs, discovered his back door kicked in and a window screen pried out, and saw two persons across the street. He then went back upstairs, called the police, and got dressed. He went outside once more, tracked the two in the snow, spotted them in a field walking west and pointed them out to an arriving police officer. Both were wearing blue jackets at the time. Everyone came together at the defendant's green pick-up truck parked on a farm utility road in a field.

The officer parked his cruiser so as to block the way of the pick-up. He then approached the truck as the defendant climbed into the driver's seat, no longer wearing his blue jacket. His companion was standing on the passenger side of the car, still wearing his blue jacket. As the officer had the two men in front of the truck checking them for weapons, the occupant of the bedroom at 475 Western Avenue, in response to a question from the officer, identified the two men as those he had seen at his premises.

The officer searched the cab of the pick-up and found a loaded revolver on the floor. The pat-down of the defendant's companion had revealed a speed loader case with two full speed loaders in it on his belt, speed loaders being devices for rapidly reloading revolvers. He also noted the presence of a blue jacket in the bed of the truck. Leaving a state police trooper in charge of the truck, the officer took the two suspects to the Brattleboro Police Station. By this time a snowstorm had begun. Another Brattleboro officer returned to the truck, and after some photographs were taken it was towed to a private garage, where it was inventoried. In the course of that procedure the pockets of the jacket were checked and a slip from an oil company reporting a delivery to the 475 Western Avenue address was found. The jacket and the delivery slip were ultimately produced at trial from police cus-

tody and both admitted into evidence, the jacket being offered by the defendant and the oil slip by the State.

At trial, the defendant challenged the admissibility of the oil slip on the ground that a complete chain of custody was not established. Testimony from the oil truck driver was also objected to on the ground that the State had not given notice of its intention to use this witness. A third contention was advanced that the State did not give notice of the existence of another potential witness who was present at the pick-up truck when the suspects were apprehended. This witness, who did not in fact testify, was not made known to the defendant.

At appropriate times and after the verdict of guilty the defendant moved for judgment of acquittal on the ground of insufficiency of the evidence to support a conviction. Additionally, he moved for a new trial on all of the other grounds previously noted. These issues are here for appellate review.

The defendant also seeks to raise in this Court challenges to the search of the truck and jacket, even though suppression was not sought below, nor objection made asserting Fourth Amendment search and seizure violations. Since appellate counsel is different from trial counsel, claims for reversal based on incompetency of counsel are also argued here.

■ There is a substantial policy interrelation that must be taken into account in dealing with the issues of failure to preserve questions for review in this Court by not making appropriate objections below, and claiming the right to review on appeal because of incompetency of counsel in that particular. It has been many times said, and the reasons frequently spelled out, that to preserve an issue for review there must have been made some challenge to its use or introduction during the proceedings below. *State* v. *Demag*, 118 Vt. 273, 277, 108 A.2d 390, 393 (1954); *State* v. *Kasper*, 137 Vt. 184, 190, 404 A.2d 85, 89 (1979).

■ As the *Kasper* case points out, a principal purpose of the rule is to provide an opportunity to take such corrective action as may be available during the trial, and avoid the prospects of endless retrials for corrective error so deplored by Wigmore in his authoritative treatise on the law of evidence. 1 Wigmore on Evidence § 18, at 322 (3d ed. 1940). Even

beyond that concern is an issue frequently alluded to in our cases as the temptation to act unethically and in bad faith in the absence of any requirement that trial counsel's actions below might govern the availability of issues on appeal.

 Trial counsel share the responsibility of calling attention to trial error when it takes place so that, if possible, the error may be overcome and the proceedings be a fair adjudication of the issues as between the defendant and the people of the state. *State* v. *Murray,* 123 Vt. 232, 233–34, 186 A.2d 193, 193 (1962). If trial counsel are free to let reversible error go unobjected to, it enables those who are ethically irresponsible to permit a trial containing such error to proceed, knowing that if the outcome is unfavorable a new trial is probably assured. *State* v. *Hood,* 123 Vt. 273, 277–78, 187 A.2d 499, 502 (1963).

If, as in this case, the assertion of incompetency of counsel is used to justify departure from the requirement of objection, parallel unfairness is possible. An error at trial, unobjected to below, becomes, on appeal with a change of counsel, a guarantee that an unsatisfactory verdict can be exchanged for a new trial. The basic rights of defendants in the criminal process certainly must be protected, but that protection cannot be extended to unprofessional and irresponsible manipulation.

██ For this reason, the claim of incompetency of counsel in this case does not make the allegations of error not claimed below eligible for review on direct appeal. Our cases have generally held that such challenges are collateral, and eligible for review under post-conviction proceedings. See *In re Parizo,* 137 Vt. 365, 369, 404 A.2d 114, 116 (1979). In the context of such a proceeding the facts can be explored and reported, with a review in this Court based on a developed record and a full evaluation of all relevant issues, rather than on the inadequate inferences of a trial transcript. Not only will the defendant have a chance to put his claim forward, but the conduct of his counsel can be expressly evaluated in the light of the circumstances disclosed by both the trial record and the evidence of the participants. Furthermore, this leaves the original appellate process free to conduct its review based

on the record of the trial in the customary fashion, according to settled law.

■ Turning now to those claims of error appropriate to this appeal, we begin with the claim that the evidence was insufficient to support a conviction of unlawful trespass. The arguments advanced to justify reversal are based upon a claim that part, if not all, of the evidence relating to the defendant's presence on the premises was circumstantial. Looking at the testimony in the light most favorable to the State, as we must, *State* v. *Daigle,* 136 Vt. 178, 180, 385 A.2d 1115, 1116 (1978), we find more than sufficient evidence for the jury to reach a supportable verdict of guilty, if believed by them, as it obviously was.

■ The particular thrust of the defendant's argument is directed at the circumstantial nature of some of the evidence presented. He cites a number of cases, including *State* v. *Larose,* 138 Vt. 281, 285, 415 A.2d 210, 212–13 (1980), and *State* v. *Benoit,* 136 Vt. 431, 433, 392 A.2d 406, 407 (1978). In the case of *State* v. *Derouchie,* 140 Vt. 437, 445, 440 A.2d 146, 150 (1981), this Court clearly states that the presence of circumstantial evidence in a case does not increase the measure of the State's burden to prove facts establishing guilt to a level higher than that of the long-standing common law measure of beyond a reasonable doubt. Such directions as may be given to a jury to assist in its evaluation of such evidence cannot be taken to change the measure of proof required to convict. The evidence in this case sufficiently supports the verdict.

There was introduced into the case an exhibit consisting of an oil company delivery slip showing an oil delivery to the premises trespassed upon on the very afternoon of the offense. This delivery slip, according to the testimony, was taken from the pocket of the defendant's jacket, which in turn was found located in the bed of the pick-up truck when it was impounded.

■ The argument of the defense seems to be that the exhibit could not properly be received in evidence without proof of full and uninterrupted custody between the time it came into the hands of the police and its introduction in court. Such an elaborate concern with custody is approached in our law only for special kinds of perishable exhibits whose evidence

speaks from a state discoverable only by scientific test, and whose identity, composition, and preservation in an unaltered state cannot be discovered by mere inspection. Where proper and reasonable custodial supervision is established, sufficient to rebut any claims of tampering, alteration or misidentity, other kinds of evidence will be received. *Gallagher* v. *Pequot Spring Water Co.*, 2 Conn. Cir. Ct. 354, 359, 199 A.2d 172, 175 (1963); *Lestico* v. *Kuehner*, 204 Minn. 125, 283 N.W. 122, 125 (1938); 32 C.J.S. *Evidence* § 607.

The delivery slip, as a piece of evidence, was offered to refute the defendant's denial of his presence at the address of the break-in. It was confirmed by its preparer as a delivery slip left by him at the address on that date and at the time stamped on it. The so-called custody gap raised here has to do with the time between the noting of the jacket in the pick-up and the later discovery of the slip in the pocket. Not the slightest suggestion of any alteration, change or even mis-identity of the slip has been brought forward, and no basis for excluding it on the ground advanced has been made to appear.

The defendant seems to be arguing that since there might have been an opportunity for some person or persons to place the slip in the jacket pocket after the defendant was arrested, the slip is inadmissible even absent any evidence to support the allegation. Granting that such a proposition may represent legitimate argument to the trier of fact with respect to the jury's treatment of the evidence, it falls short of render-ing the slip immaterial, considering its discovery in the de-fendant's jacket. Its admission on that basis is sustained.

The defendant also claims error in the admission of testimony by the oil company deliveryman, as a rebuttal wit-ness for the prosecution, over the objection of the defense, identifying the oil slip and describing where he left it on the premises. The defense challenge was based on the requirement of V.R.Cr.P. 16(a)(1) that the prosecution disclose to the defendant's attorney, on request, "the names and addresses of all witnesses then known to him."

The State's response has two aspects. The first is that the oil slip itself was listed as a proposed exhibit in the case, and

that it was the slip, not the witness, which tended to incriminate the defendant. This argument is essentially one of no prejudice to the defendant. The second is that the fact that the oil truck driver was called as a witness in rebuttal somehow excused the requirement of notice to the defendant.

Faced with an assertion of error of this nature, our first inquiry must be as to prejudice to the defendant. *State* v. *Hohman*, 138 Vt. 502, 506, 420 A.2d 852, 855 (1980). Here it is quite clear there was none. The deliveryman's testimony, a straightforward recital of his oil service of the house and the leaving of the particular slip, which he identified, at or in the mail box, merely corroborated the facts evidenced by the delivery slip itself when it was introduced. There was no surprise to the defendant who had ample notice of this line of argument from the listing of the exhibit, and therefore no ground for reversal appears.

But we will not let the matter rest here. There is, in fact, a thread of validity to the contention of the State that rebuttal witnesses may not be subject to pretrial disclosure. This is a consequence of the circumstance that, in some cases, they may not be known to the prosecution at that time. It is not a right to withhold and, if the witness is then known, there is a duty to list the witness under V.R.Cr.P. 16. That duty is a continuing one, and, as soon as a previously unknown witness becomes known, his or her existence must be declared to the defense. *State* v. *Connarn*, 138 Vt. 270, 273, 413 A.2d 812, 814 (1980).

A disturbing number of cases where the violation of V.R.Cr.P. 16 plays a part in the appeal have recently come before us, and it is a matter of concern. In this very case there is further allegation of failure by the prosecutor to list as a witness a man who was present as a passenger in the car driven by the state trooper who guarded the pick-up truck in the field until it was towed away by the Brattleboro police. That objection, not having been raised below, cannot be considered on appeal. *State* v. *Mecier*, 138 Vt. 149, 157, 412 A.2d 291, 296 (1980).

But while it may well be that even properly preserved the contribution of this witness would have been so peripheral

that, in this case, the error could be called harmless and would not constitute grounds for reversal, that does not necessarily discharge the prosecutor's duty under the Rule. That duty is part of his professional responsibility, and a failure to fulfill it that does not amount to reversible error may still prompt submission and review of the matter as an ethical violation.

*Judgment affirmed.*

Note: The State, on motion for reargument, defends against the charge that it failed to disclose the name of a potential witness by stating for the first time, in an affidavit, that it had no knowledge of the existence of or need for certain potential witness until the second day of trial. That statement, having been made after briefing and argument, was not available for consideration by the Court but is acknowledged here. The decision in this case remains unchanged.