## State of Vermont v. Dennis Longe

[349 A.2d 232]

No. 25-75

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed December 2, 1975

*M. Jerome Diamond*, Attorney General and *Raymond L. Betts, Jr.*, Assistant Attorney General, Montpelier, for State.

*Robert Edward West*, Defender General and *Robert M. Paolini*, Deputy Defender General, Montpelier, for Defendant.

Smith, J. The defendant, Dennis Longe, was arrested and arraigned on or about June 17, 1974, for the rape of a seventeen-year-old girl. Jury trial was held in the District Court of Vermont, Unit No. 3, Lamoille Circuit, on October 2 and 3, 1974, which resulted in the jury finding the defendant guilty

of forcible rape. The defendant has appealed here from the verdict and the resulting judgment.

The evidence offered by the State was that the complaining witness requested, from one John Edward, a ride from an establishment known as the Salty Dog to the village of Jeffersonville where she had employment as a baby-sitter. Passengers in the same automobile were Dennis Blanchard and the defendant. It was the testimony of the complaining witness that Edward drove to and parked on a side road and that she was forcibly raped by the defendant as well as Edward. She also claimed that during this incident her pants were forcibly removed with a consequent ripped zipper. The defendant admits having intercourse with the complaining witness, but asserted it was with her consent. In addition to prosecutrix, the State produced an eye witness to the alleged rape.

The first question presented to this Court for determination is whether the trial court erred in admitting the testimony of one Norma Stancliffe. Mrs. Stancliffe testified that, after the party returned, she saw the complaining witness standing alone, and crying, outside the Salty Dog. Having known the girl for several years she approached her and said, "(W)hat's the matter? What happened?" It was her further testimony that prosecutrix was "too shook up" to give a full explanation, but made comments such as, "It was awful. I can't believe . . . ."

The complaining witness stated that Mrs. Stancliffe was the first person she saw after the alleged rape, and that such meeting took place after the men involved had dropped her off at the Salty Dog, within fifteen minutes of the incident.

It is the contention of the defendant that the testimony of Mrs. Stancliffe as to the complaining witness's answers to her questions were hearsay, and should not have been admitted into evidence. The State contends that the statements made by prosecutrix to Mrs. Stancliffe were spontaneous utterances and were res gestae.

> "Res Gestae" comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the

formulation of their context. The term "res gestae" implies that the events themselves speak through the instinctive words and acts of the participants and that the facts and declarations which grow out of the main fact are contemporaneous with it and serve to illustrate its character. Expressed differently, whether a declaration is a part of the "res gestae" depends upon whether the declaration was the facts talking through the party or the party talking about the facts.

*State* v. *Blair,* 118 Vt. 81, 90–91, 99 A.2d 677 (1953).

Courts have long varied as to what is meant by the time interval which can intervene before an utterance is no longer contemporaneous with the principal act. But modern legal thinking is that the term "contemporaneous" is not used in a completely restrictive sense, but rather in a broadly descriptive one. 29 Am.Jur.2d *Evidence* § 716. 2 Wharton's Criminal Evidence § 300, at 86–87 (13th ed. C. Torcia 1972), speaking to the subject of sex-crime trials, states that spontaneity is indicated "where the declaration was made to the first person met after the event", and "where it was made immediately after the victim escaped or was rescued from the assailant . . . ."

We find no difficulty in holding in this instance that the declaration by prosecutrix to Mrs. Stancliffe was part of res gestae and an exception to the hearsay rule. Mrs. Stancliffe was met by the complaining witness within fifteen minutes of the assault and soon after she was released by her assailants. She was the first person to whom the complaining witness had spoken.

The next issue posed involves whether the State's failure to produce, in response to a discovery motion, the clothing worn by the complaining witness denied appellant due process of law.

Between June and October, 1974, defendant requested an opportunity to examine all garments worn by the complaining witness on the night of the incident. The State gave assurances that it would attempt to comply with the requests. At an omnibus hearing on September 3, 1974, the State indicated its intention to produce the garments. Some three

weeks later, the garments not having been produced, the defendant moved for dismissal as per V.R.Cr.P. 16.2(g). The motion was denied. At trial, after the State rested, the defendant moved for a directed verdict, which motion was also denied.

A search of the record discloses that defense counsel did have the opportunity to examine the pair of slacks worn by the complaining witness, which was her outer and lower garment. It appeared that the other clothes worn by prosecutrix had been laundered before the defendant's request and that, having a limited wardrobe, she could not give these articles to the State except by divesting herself of clothing, including shoes.

Defendant has failed to show any prejudice to his case by the failure of the State to produce those articles of apparel which were washed and worn. No error is found.

*The judgment below is affirmed, and the matter is returned to the District Court of Vermont, Unit No. 3, Lamoille Circuit, for the imposition of sentence.*