## State of Vermont v. Charles H. Roy

[436 A.2d 1090]

No. 359-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed September 1, 1981

222

*Mark J. Keller,* Chittenden County State's Attorney, and *Susan R. Via,* Chief Deputy State's Attorney, Burlington, for Plaintiff.

*Paul D. Jarvis* of *Blum Associates, Inc.,* Burlington, for Defendant.

**Hill, J.** Defendant appeals a jury verdict finding him guilty of sexual assault, 13 V.S.A. § 3252(3), and lewd and lascivious conduct, 13 V.S.A. § 2602, involving a seven-year-old boy with physical handicaps.

Defendant was arrested after police were notified by a passerby of a possible sexual assault taking place several blocks away. Upon reaching the scene, the police saw a man driving a car fitting the passerby's description with a young child standing in the front seat. The child was pulling up his trousers and his genitals were exposed. The police arrested

defendant, and transported the child and defendant separately to the police station. Both defendant and the alleged victim were then questioned by different police officers. The child talked with at least three policemen over a span of more than one hour.

Defendant and the victim's father were friends, and the child had known defendant for some time. The child suffers from a hearing deficiency, is unable to speak clearly, and cannot read. He attends a special school for students with learning problems. After a hearing on a motion to exclude him from testifying at trial, however, the child was declared competent, and defendant does not challenge that finding on appeal. At trial, the child testified defendant fondled and kissed various parts of his body, and, in language expected from someone his age and with his handicaps, described various sexual activities performed by defendant.

Testimony was also presented by two of defendant's friends that on the afternoon in question they had gone swimming with the child and defendant. They told the jury that, shortly before the time of the arrest, defendant had ordered them from his car and gone off with the child, ostensibly to take him home.

In addition, the jury heard testimony by a police officer regarding a statement given him by the victim at the police station approximately one hour after the incident in question. The statement involved a description of the activities for which defendant is charged.

Defendant did not testify.

I.

The most serious challenge to defendant's conviction involves testimony given by a police officer regarding statements made by the victim at the police station approximately one hour after the alleged crime and after the child had already spoken with two other policemen. The child's description of defendant's activities came in response to questioning by the officer who testified. At one point during voir dire of the officer, the trial judge warned him that the testimony he planned to give obviously did not contain sentence construction or words which a seven-year-old child with a learning disability would use.

· [1] Although repetition of the child's story was clearly hearsay under the common law, and thus normally inadmissible, the judge ruled the evidence admissible as falling within the res gestae exception to the hearsay rule. This Court has defined the law on excited utterances and the res gestae rule: .

> *Res Gestae* comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of their context.

*State* v. *Blair,* 118 Vt. 81, 90–91, 99 A.2d 677, 683 (1953). See also *State* v. *Longe,* 133 Vt. 624, 349 A.2d 232 (1975).

 Courts, seeking to assure the trustworthiness of the evidence, have elucidated factors to be considered in determining whether statements sought to be admitted fall under the res gestae rule. The declarations must possess the following elements: (1) the statement must relate to the main event and in some way characterize that event; (2) it must be a natural statement growing out of the event rather than a narrative explaining the event; (3) it must be a statement of fact rather than an expression of opinion; (4) it must be a spontaneous and instinctive utterance evoked by the fact, and not the product of reflection; (5) while the statement need not be completely contemporaneous with the event in question, the declaration must be sufficiently close in time as to exclude the possibility that it resulted from premeditation; and (6) the statement must have been made by either a participant or eyewitness of the event involved. See *Beck* v. *Dye,* 200 Wash. 1, 9–10, 92 P.2d 1113 (1939).

 The child's description of the alleged crime does not contain those elements necessary to assure accuracy. The officer's interview with the child came at least one hour after the incident and after the child had already talked with other policemen. In addition, and most pertinent in finding that the res gestae exception does not apply, the child's statement, which was repeated for the jury, came as a result of questioning by the policeman. This was not an excited, spontaneous

utterance. "[W]hether a declaration is a part of the 'res gestae' depends upon whether the declaration was the facts talking through the party or the party talking about the facts." Blair, supra, 118 Vt. at 91, 99 A.2d at 683. There is no evidence that the child was stunned or in a state of emotional upheaval at the time of his conversation with the officer. And although the policeman was warned by superiors not to suggest to the child what to say, and there is no evidence he disregarded that warning, the child's statement clearly resulted from a rational dialogue. The officer's testimony reiterated a narrative, not a spontaneous utterance, and as such was improperly admitted under the res gestae exception to the rule excluding hearsay testimony.

The State, however, urges the Court to adopt a special application of the res gestae rule when dealing with children and sex offenses. The rationale is that someone of this victim's age who has been involved in this type of conduct would not have the presence of mind to utter anything other than an untainted reaction to the event, thus assuring the truth of the statement. While it is true that a child might be less likely deliberately to edit a statement in contemplation of litigation or "to get even," it is equally true that a child like the one here involved might more easily be subjected to suggestion by police than might someone more mature. Since the child's declaration came after a lengthy time with policemen and in response to questioning, we cannot say with assurance that the child was not trying to please or satisfy his companions. Cf. State v. Evans, 104 Ariz. 434, 454 P.2d 976 (1969); People v. Woodward, 21 Mich. App. 549, 175 N.W.2d 842 (1970).

In Longe, supra, 133 Vt. at 626, 349 A.2d at 234, we quoted from 2 Wharton's Criminal Evidence § 300, at 86-87 (13th ed. C. Torcia 1972), in suggesting that with sex crimes, the statement sought to be introduced need not be as contemporaneous with the event as is the case with other events. However, the authority we cited specified that the declaration still must be given to the first person the victim meets after the offense is committed; here, the officer who testified was well down the line in people who had contact with the victim. See also State v. Schmidt, 69 Wis. 2d 668, 230 N.W.2d 890 (1975) (statement admitted as excited utterance, but was not given in response to questioning); State v. Bloomstrom, 12 Wash.

App. 416, 529 P.2d 1124 (1974) (child told parents story of assault within minutes of being released by defendant).

The possibility was raised at oral argument that the officer's testimony was admissible, as evidence of prior consistent statements introduced to buttress a witness whose credibility had been attacked. The child had previously taken the stand and testified about the assault. At cross-examination, it was suggested that the child had been manipulated by the state's attorney for purposes of obtaining a certain type of testimony at trial. Such testimony, though normally excluded as hearsay, *United States* v. *Bays,* 448 F.2d 977, 979 (5th Cir. 1971), is admitted by some courts as nonhearsay to rebut a charge of recent fabrication or improper influences or motive, *United States* v. *Baron,* 602 F.2d 1248, 1252 (7th Cir.), *cert. denied,* 444 U.S. 967 (1979); *United States* v. *Allen,* 579 F.2d 531 (9th Cir.), *cert. denied,* 439 U.S. 933 (1978); *Rease* v. *United States,* 403 A.2d 322 (D.C. App. 1979).

This Court has not had the opportunity to evaluate the rules governing admission of prior consistent statements following an attack on a witness's credibility since *State* v. *Turley,* 87 Vt. 163, 88 A. 562 (1913). In that case, we ruled that such statements were admissible as corroborative evidence to restore a witness's credibility, but not as substantive evidence. In *Woodmansee* v. *Stoneman,* 133 Vt. 449, 456–57, 344 A.2d 26 (1975), however, we reiterated that rule, although holding it there inapplicable.

■ The hearsay rule rejects out-of-court assertions offered to prove the truth of the matter asserted; the source of these assertions often is not subjected to cross-examination and was not under oath that he was telling the truth when the assertions were made. See generally 5 Wigmore on Evidence §§ 1362, 1367 (Chadbourn rev. 1974). Vermont law, reflected in *Turley,* created an exception to the rule excluding out-of-court statements when a witness's in-court testimony has been challenged as resulting from improper motives or influences or recent fabrication.

■ Most courts in reconsidering this area of evidentiary law allow prior consistent statements into evidence as nonhearsay evidence, and, therefore, as substantive evidence. See Federal Rules of Evidence 801(d)(1)(B). These courts have

concluded that since both the source of the statements is before the jury for scrutiny and the person who heard the prior consistent statements is in court to testify, the statements are inherently as reliable as any other testimonial evidence. See McCormick on Evidence § 251, at 604 (2d ed. 1972); *United States* v. *Quinto*, 582 F.2d 224, 233–34 (2d Cir. 1978). We find this reasoning persuasive, and consequently adopt the rule allowing the admission of prior consistent statements into evidence as substantive evidence when (1) the prior consistent statement corroborates the witness's in-court testimony; (2) the party offering the prior consistent statement establishes that the statement is being offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive; and (3) the statement is shown to have been made prior to the time that the supposed motive to falsify arose. See *id.* at 233–34.

The officer's testimony, consequently, would have been admitted as evidence of a prior consistent statement by the victim, having fulfilled the three requirements outlined above. The question then arises, however, whether our adoption of this evidentiary rule following defendant's trial is constitutionally condemned. Changes in procedure are not generally treated as ex post facto, *United States* v. *Henson*, 486 F.2d 1292, 1305 (D.C. Cir. 1973), but certain alterations in evidentiary rules can fall within the prohibition, *id.* at 1305–06. "[A]lterations do not fall within the ex post facto ban if they pertain to the mode of trial or the rules of evidence, do not deprive the accused of a defense, and operate only in a limited manner and insubstantial [*sic*] to his disadvantage." *Government of Virgin Islands* v. *Civil*, 591 F.2d 255, 258 (3d Cir. 1979) (citing *Beazell* v. *Ohio*, 269 U.S. 167, 170 (1925)). Since the ruling below allowing admission was correct as a matter of law, even though the reasons provided were incorrect, prejudice to defendant is insubstantial. See *State* v. *Kelly*, 131 Vt. 582, 588, 312 A.2d 906 (1973) (technical error of the court below may be affirmed where the court has achieved the right result for the wrong reason); *Zbaraz* v. *Quern*, 596 F.2d 196, 202 n.19 (7th Cir. 1979); *Baron, supra,* 602 F.2d at 1252 (since as a matter of law it was not error to admit the evidence, the order should be affirmed even

if the district court relied on a different ground). The burden of proof is not made less onerous by our decision nor would defendant likely have used different trial tactics had he forecast this decision. Given the insubstantial harm to defendant, we hold our modification of the evidentiary rule dealing with prior consistent statements does not fall within the ex post facto ban.

## II.

Defendant also contends that the motion to dismiss for lack of a speedy trial should have been granted. Administrative Order No. 5, 12 V.S.A. App. VIII, recommends that a defendant in custody be brought to trial within 90 days of arraignment, but the rule is discretionary with the trial court, see *State* v. *Chamberlin,* 131 Vt. 549, 551, 310 A.2d 30 (1973). In the case at bar, defendant was arraigned on August 24, 1979, filed a motion to dismiss for lack of speedy trial on December 3, 1979, and finally went to trial on February 20, 1980. In the interim, however, the court heard a motion to suppress evidence and a motion to exclude the victim's testimony. Defendant also spent a brief time in a hospital undergoing psychiatric examination. This scenario clearly differs from *State* v. *Franklin,* 136 Vt. 568, 396 A.2d 138 (1978), where thirteen months passed from the filing of a suppression motion until the court's decision on that issue and over eighteen months from citation to trial. Here, the delay was largely due to defendant's own trial strategy. Of great import, in addition, defendant does not claim that he was prejudiced by any delay. See *State* v. *Angelucci,* 137 Vt. 272, 277–78, 405 A.2d 33 (1979). The court held a full hearing to consider defendant's request for speedy trial claim. While we impress upon the courts the importance of bringing defendants, especially when incarcerated, to trial as quickly as possible, defendant's request for dismissal as a result of delay is without merit. See generally *State* v. *Unwin,* 139 Vt. 186, 424 A.2d 251 (1980).

## III.

Defendant requested a charge on the issue of lack of identification of defendant by certain witnesses, and contends that the court's refusal demands that we reverse the conviction.

 In most cases, an instruction on the identification issue is preferable. *United States* v. *Napue,* 401 F.2d 107, 112 (7th Cir. 1968), *cert. denied,* 393 U.S. 1024 (1969). Here, the trial judge did present an instruction on identification, explaining to the jury that it had the responsibility to determine whether, based on all the evidence presented, defendant was involved in the crime. Defendant's objection in effect is that the trial judge did not specify that no witness testified that defendant was actually seen committing the crime. The victim, in addition, could not identify defendant at trial. There was, however, an indication defendant's appearance changed drastically between the time of the crime and when the trial began. In addition, there was evidence identifying defendant as the assailant. Content of an identification charge is a matter of discretion for the trial court, *United States* v. *Evans,* 484 F.2d 1178, 1187–88 (2d Cir. 1973), and an examination of the transcript reveals the validity of the instructions.

## IV.

Defendant further contends that 13 V.S.A. § 2602, prohibiting lewd and lascivious acts, is unconstitutional as being void on its face for vagueness. That provision reads:

> A person who shall wilfully and lewdly commit any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of such person or of such child, shall be imprisoned not less than one year nor more than five years.

 Vagueness challenges to statutes not involving First Amendment freedoms must be examined in light of the facts. *Wright* v. *State,* 405 A.2d 685, 687 (Del. 1979). To be valid, a penal statute must be sufficiently certain as to inform a person of reasonable intelligence of conduct which is proscribed. *Upshur* v. *State,* 420 A.2d 165, 168 (Del. 1980); *Brittany Farms Health Center, Inc.* v. *Administrator,* 177 Conn. 384, 418 A.2d 52, 54 (1979). While in certain circumstances the words "lascivious" and "lewd" might be too vague to be applicable, *McCright* v. *Olson,* 367 F. Supp. 937, 945

(D.N.D. 1973), it strains credibility to argue that the crimes herein charged are not sufficiently obvious so as to be legitimately proscribed. See *Murray* v. *Florida,* 384 F. Supp. 574, 579 (S.D. Fla. 1974). In addition, the specific intent requirement in the statute alleviates any problem with vagueness.

## V.

Finally, defendant claims that there was not sufficient evidence to find guilt beyond a reasonable doubt, and that the trial judge should have granted the motion for a judgment of acquittal. Viewing the evidence in the light most favorable to the State, as we must when faced with a motion for acquittal, *State* v. *Ballou,* 127 Vt. 1, 3, 238 A.2d 658 (1968), the answer to defendant's claim is obvious. To the inquiry whether the jury on the evidence could be justified in finding the defendant guilty beyond a reasonable doubt, we answer in the affirmative.

*Affirmed.*