## State of Vermont v. Jeannette Cecilia Solomon

[476 A.2d 122]

No. 244-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed March 23, 1984

270

*David G. Miller*, Franklin County State's Attorney, and *Christopher A. Micciche*, Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*Andrew B. Crane*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

Gibson, J. Following trial by jury, defendant appeals her conviction of arson in the first degree under 13 V.S.A. § 502. We reverse and remand for a new trial.

Defendant presents three issues for review, but, because of our disposition of this case, we need only address the first issue: whether the trial court committed reversible error by

permitting certain testimony concerning a car that was observed at the scene shortly before the fire.

The events that led to the conviction took place in the early morning hours of October 7, 1979. At about 2:30 that morning a fire broke out in a building in Swanton known as the Pizza Hut. The downstairs portion of the building was a snack bar and game room operated by Michael Martel. Upstairs was a loft area used by Martel as his principal place of residence. Martel's father used the rear of the building for storage and workspace in his furniture repair business.

Shortly before the fire, a passerby, Lynda Bell, observed a car parked by the Pizza Hut. She did not recognize the car, but took note of it while checking the area outside her father's garage next door. Later, while watching the fire, she described the car to Martel's mother, who had just been driven to the fire by defendant. When Mrs. Martel heard the description, she exclaimed that "it fit [defendant's] car to a 'T'."

Defendant and Michael Martel lived together for several years. After they separated in 1975, their relationship became bitter. Defendant made threats against Martel, both in his presence and elsewhere. In the months following the fire, defendant told several persons she had set the fire, claiming that she had finally gotten even with Martel. At the trial, however, defendant denied she had set the fire, maintaining that her earlier statements had been made only because many different people had asked her about the fire, she was "tired of being hounded all the time," and she thought people would not believe her whatever she said.

Investigators came to conflicting opinions regarding the origin of the fire. Two investigators believed the cause of the fire was electrical; one investigator concluded the fire had been set, beginning in the area and in the manner earlier described by defendant. More than five months after the fire occurred, defendant was charged with the crime.

Defendant contends that the utterance of Mrs. Martel and the testimony given by the witness Lynda Bell concerning her conversation with Mrs. Martel constituted prejudicial inadmissible hearsay and that because neither person could remember Lynda Bell's description of the car, this violated defendant's constitutional right to confrontation of the witnesses against her. The State maintains the statement was properly admitted,

either as an excited utterance exception to the hearsay rule (now codified as V.R.E. 803(2)), or as a present sense impression exception (now codified as V.R.E. 803(1)). These exceptions to the hearsay rule are among several that at common law were grouped together under the general heading res gestae—hearsay statements that were admitted because they accompanied and explained an event or condition otherwise relevant. See Reporter's Notes to V.R.E. 803.

■ ■ We first consider whether Mrs. Martel's statement that Lynda Bell's description "fit [defendant's] car to a 'T' " qualifies as an excited utterance. Two requirements are essential to the excited utterance exception: (1) a startling event or condition, and (2) a spontaneous utterance in reaction to the event or condition made under the stress of excitement and not as a result of reflective thought. See McCormick on Evidence § 297 (E. Cleary 2d ed. 1972); 4 J. Weinstein and M. Berger, Weinstein's Evidence, 803-78 to 803-89 (1981). Although questioned by those who contend the reactions and observations of an excited person are likely to be distorted, the underlying rationale for the exception lies in the assumption that a person's powers of reflection and fabrication will be suspended when he is subject to the excitement of a startling event, and any utterances he makes will be spontaneous and trustworthy. See McCormick on Evidence, supra; 4 J. Weinstein and M. Berger, Weinstein's Evidence, supra, 803-79 to 803-80.

■ When Mrs. Martel's statement is examined in the light of the above requirements, it is readily apparent that the statement does not fit within the excited utterance exception. The event to which Mrs. Martel was responding was Lynda Bell's description of the car she had seen approximately ten minutes earlier. Although the fire they were watching did qualify as a "startling event," it was not the event to which Mrs. Martel was responding. There is no evidence that the description of the car was in any way "startling" or unusual. In fact, at the time of trial neither of the participants to the conversation could remember any distinctive or unique features that would distinguish the car in their minds. Lynda Bell remembered the car as a mid-sized American car of a

darker color, while all that Mrs. Martel could recall was that the car was described as older and dark. In addition, Mrs. Martel paused "for a couple of seconds" before responding, indicative of some reflection on her part. Thus, the utterance of Mrs. Martel was not admissible an an excited utterance.

A stronger argument may be made that the proffered utterance of Mrs. Martel was her present sense impression of the description given by Lynda Bell. In contrast to the excited utterance exception, the present sense impression utterance need not be made in response to an exciting event. The reliability or trustworthiness of such an utterance comes from its timeliness. If made contemporaneously with the event or immediately thereafter, there is little chance of misstatement due to loss of memory and little or no time for fabrication or calculated misstatement; in addition, the utterance is usually made to a third person who is also present at the event and can testify about it, thus providing a check on the accuracy of the declarant's statement. See McCormick on Evidence, *supra*, § 298; 4 J. Weinstein and M. Berger, Weinstein's Evidence, *supra*, 803-71.

In this case, the utterance of Mrs. Martel that "it fit [defendant's] car to a 'T' " came in response to a verbal description by Lynda Bell of a car she had seen about ten minutes earlier. The evidence was clearly offered for the purpose of proving the presence of defendant's car at the scene of the crime just prior to the fire. The evidentiary value of Mrs. Martel's utterance hinged on the accuracy and reliability of the underlying Bell description; however, neither party to the conversation could recall in any detail the substance of that description. No reason was advanced as to why Bell had taken special note of the car, and the only support for her powers of observation came from her own testimony about how she and her brother in prior years had made a game of identifying motor vehicles.

When Mrs. Martel was asked about her recollection of defendant's car, in which she rode to the fire, she testified she did not remember a thing about the car. Moreover, when asked about her statement to Lynda Bell, the most she could recall was that she thought to herself, "Well, that sounds like the car that Jan—It could have been the car that Jan was driv-

ing." She did not recall making the statement "it fit [defendant's] car to a 'T'."

■■ Because of the lack of memory of the two participants to the conversation, defendant was unable through cross-examination to test the reliability of Bell's observations. There was no way for defendant to test whether Bell's middle-of-the-night perceptions of the car were accurate, whether she retained an accurate impression of the car during her subsequent conversation with Mrs. Martel, and whether she conveyed her impression in accurate language to Mrs. Martel. The "essence of the hearsay rule is a requirement that testimonial assertions shall be subjected to the test of cross-examination . . . ." 5 J. Wigmore, Wigmore on Evidence § 1362, at 10 (J. Chadbourn rev. 1974). "The rejection of such testimony rests on the difficulty of testing reliability. Acceptance usually depends on the right of cross-examination . . . ." *State v. LaRose*, 137 Vt. 531, 532, 408 A.2d 651, 652 (1979). In the absence of an opportunity for defendant's counsel to test the reliability of the event itself—i.e., the out-of-court description of the car given by Lynda Bell—either by cross-examination of the parties to the conversation or by some other means, it was error on the part of the trial court to admit Mrs. Martel's utterance as a present sense impression of that description.

Inasmuch as we hold that the disputed testimony is inadmissible hearsay, we do not reach defendant's argument that defendant's constitutional right to confront witnesses has been violated.

■ The State contends that if the admission of the utterance was erroneous, the error was harmless. We do not agree. The utterance of Mrs. Martel, if believed, would place defendant's car at the fire scene just minutes before the fire was discovered. The trial court included this testimony among the factors it considered in denying defendant's motion for judgment of acquittal at the close of the State's case. In light of the conflicting testimony about defendant's whereabouts at the time the fire began and the conflicting opinions of the experts as to the cause of the fire, we are unable to find that there was overwhelming evidence of defendant's guilt inde-

pendent of the erroneous testimony and that defendant was not prejudiced as a result thereof. *State* v. *Wetherby,* 142 Vt. 248, 453 A.2d 1124 (1982). Such being the case, the matter must be reversed and remanded for retrial.

*Reversed and remanded.*