### State of Vermont v. Dana Shaw

[542 A.2d 1106]

No. 86-033

Present: **Allen, C.J., Peck, J., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed December 11, 1987

Motion for Reargument Denied January 22, 1988

276

*James P. Mongeon*, Rutland County State's Attorney, Rutland, for Plaintiff-Appellee.

*David W. Curtis*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from convictions for sexual assault and felony trespass in violation of 13 V.S.A. §§ 3252(1)(C) and 3705(d). We affirm in part and reverse in part.

The complainant testified that defendant, an acquaintance, appeared uninvited at her apartment door at about 3 o'clock in the morning. He persuaded her to let him in. After using her bathroom, he emerged clad in a towel. She demanded that he get

dressed and leave her apartment. He then threatened the complainant with a knife and sexually assaulted her twice. After the second assault, the complainant managed to dress and flee the apartment. She ran to her downstairs neighbors, the Kasubas, and pounded on their door asking for help. When they did not come immediately, she ran to the home of the Martoccis, other neighbors, unknown to her, and called for help. Her calls roused the Martoccis, and Mr. Martocci let her in. The complainant told the Martoccis she had been assaulted by a man with a knife. They called the police.

Mr. Kasuba had meanwhile searched for the complainant after hearing her cries, but could not find her. He found defendant in her apartment and, after speaking with him, called the police. Two police officers arrived and told defendant he had to leave the apartment. He complied with their request.

The Martoccis called the Kasubas, and Mr. Kasuba brought the complainant to his apartment, where she stayed with him and his wife. Mr. Kasuba returned to the complainant's apartment and discovered that defendant had returned. The police were called again and forcibly removed defendant.

Defendant claims the trial court erred by admitting evidence of and allowing the State's argument about changes in the complainant's personality following the sexual assault, by admitting statements made by the complainant to the Martoccis and the Kasubas, by intervening excessively to ask Donna Kasuba about the complainant's demeanor at the time she made her statements, by refusing to order the complainant to provide the defense with copies of the diary entries she made concerning the incident, and by failing to require the State to elect which entry of complainant's apartment was grounds for the trespass charge.

The State introduced testimony from two friends of the complainant that her behavior and personality had changed after the sexual assault. They testified that prior to November 2, 1984, she had been outgoing. After that date, she became withdrawn and depressed. The purpose of the testimony was to corroborate the complainant's version of the events and rebut the defendant's argument that the sexual assault did not occur. Defendant claims that the testimony was too remote to be relevant, and even if relevant too prejudicial. We find no error in the admission of the testimony.

In his claim that the evidence was too remote to be relevant, defendant argues that other events could have caused the changes. The witnesses compared the behavior of the complainant before the date of the rape with her behavior after it. The testimony did not, as defendant suggests, compare her behavior before the assault with her behavior at the time of trial some six months later. While the prosecutor in her summation compared the evidence of the complainant's behavior prior to the date of the sexual assault to her appearance and demeanor at the trial, no objection was made to these comparisons. Since the trial court did not have an opportunity to rule on the issue of the propriety of the prosecutor's comparison, we decline to address this issue on appeal. See *Poulin* v. *Ford Motor Co.*, 147 Vt. 120, 125, 513 A.2d 1168, 1172 (1986) (citing *Collette* v. *Bousley*, 141 Vt. 373, 374, 449 A.2d 936, 937 (1982)).

■ Rulings on remoteness lie largely within the discretion of the trial judge. *Bradley* v. *Buck*, 131 Vt. 368, 371, 306 A.2d 98, 101 (1973) (citing *Long* v. *Leonard*, 113 Vt. 258, 261, 32 A.2d 679, 681 (1943)). When reviewing a discretionary ruling, this Court will only reverse when that discretion has been abused or withheld. *State* v. *Picknell*, 142 Vt. 215, 230, 454 A.2d 711, 718 (1982) (citations omitted). We find no abuse of discretion in admitting this evidence. This is not a case where the probative value of the evidence is so slight as to require exclusion as a matter of law. See *Bradley*, 131 Vt. at 371, 306 A.2d at 101. The evidence was probative of the fact of the occurrence of the sexual assault. See *Simmons* v. *State*, 504 N.E.2d 575, 581 (Ind. 1987) (testimony of the victim's father and sister regarding her behavior after the rape was relevant in that it was "probative of the fact that she had been raped."); *State* v. *Bishop*, 240 Kan. 647, 660, 732 P.2d 765, 774 (1987) (rape victim's testimony that she had received counseling as a result of rape, introduced to show psychological as well as physical injury, was admissible as evidence of occurrence of the rape). Contrast *State* v. *Kennison*, 149 Vt. 643, 651, 546 A.2d 190, 195 (1987) ("[The] statement made several weeks before this trial was simply too far removed in time and circumstances to the Greenwood assaults in September, 1983, to be admissible. The certain effect of such a statement would have been to confuse the issues and mislead the jury.").

■ Defendant also claims that, even if the testimony was relevant, the trial judge should have excluded it under V.R.E. 403

because its probative value was outweighed by danger of unfair prejudice and confusion. Whether an assault occurred was the key question in this trial, and evidence of changes in the complainant's personality was material on this issue.

Defendant claims that the testimony by complainant's friends could have misled the jury and encouraged convictions on the basis of sympathy. The trial judge instructed the jury that in rendering its decision they were not to be influenced by sympathy. Defendant has presented nothing to indicate that the jury disregarded the trial court's instructions. In the absence of any such indication, we presume the jury followed the trial court's instructions. "We must assume that the jury abided by the instructions of the court. There can be no assumption under our system of jurisprudence that the jury will disregard the instructions of the trial court." *Lewis* v. *Gagne*, 123 Vt. 217, 219, 185 A.2d 468, 470 (1962) (citations omitted). See *State* v. *Covell*, 142 Vt. 197, 201-02, 453 A.2d 1118, 1120 (1982) (the Court presumes the jury followed the curative instruction of the trial judge); *State* v. *Fisher*, 134 Vt. 339, 341, 360 A.2d 102, 104 (1976). The possible prejudice to defendant does not outweigh the substantial probative value of the testimony on the key issue, the fact of the sexual assault. Thus, defendant has not demonstrated prejudicial error in the trial court's admission of evidence of changes in the complainant's personality after the sexual assault. We find no abuse of discretion by the trial court in admitting this evidence.

Defendant next claims that the trial court erroneously admitted statements by the complainant to her neighbors as "excited utterance" exceptions to the hearsay rule. V.R.E. 803(2) allows admission of hearsay statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Defendant maintains that the statements to the Martoccis and the Kasubas do not qualify as excited utterances for several reasons.

First, he claims that since the complainant told her neighbors she had been assaulted but did not tell the Martoccis that she had been sexually assaulted, and did not tell the Kasubas of the sexual assault until two or three hours after the event, this showed conscious reflection on her part. This state of mind, defendant argues, was inconsistent with being under the stress of an exciting event. Defendant cites *State* v. *Solomon*, 144 Vt. 269, 476 A.2d 122 (1984), to support his claim that telling only part of

what happened is inconsistent with being in an excited condition. *State* v. *Solomon* is not on point. In that case, the declarant was watching a fire. In response to a statement by another bystander, and after pausing to consider, the declarant made a statement about the possible owner of a car seen at the scene of the fire. The Court found in that case that the statement did not relate to the exciting event, that the declarant paused before answering, and that she did not appear excited. *Id.* at 272-73, 476 A.2d at 124. Here, by contrast, the statements by the complainant related directly to the startling event, the sexual assault, and there was ample evidence to show the complainant was in an excited condition.

It is clear from the testimony of the Martoccis and the Kasubas that the complainant was under the stress of the sexual assault when she made her statements to them. The Martoccis described her as shaking, pale and hysterical. As she told them about being attacked by a man with a knife, she was crying and trembling.

The Kasubas described the complainant as very frightened, afraid to return to her own apartment, nervous, and crying. She remained in the Kasubas' apartment and related some of the details of the assault, becoming hysterical as she described being forced to remove her nightgown. When the Kasubas discovered defendant had returned to the complainant's apartment, they found the complainant, who had been standing in the doorway to their apartment, huddled in a ball on the floor, crying and screaming hysterically, "don't let him in." After much coaxing, they convinced her to get off the floor. It was shortly after this incident that the complainant told Mrs. Kasuba that defendant had raped her.

■ Defendant next argues that the statements by the complainant to the Martoccis and the Kasubas were inadmissible because they were in response to questions, citing *State* v. *Roy*, 140 Vt. 219, 436 A.2d 1090 (1981). This Court ruled in *Roy* that statements a child made during a lengthy interrogation by a police officer did not qualify as excited utterances. *Id.* at 224-25, 436 A.2d at 1092. The Court found that there was "no evidence that the child was stunned or in a state of emotional upheaval at the time of his conversation with the officer," and that "the child's statement clearly resulted from a rational dialogue." *Id.* at 225, 436 A.2d at 1092. In this case, by contrast, the witnesses testified that the complainant was hysterical and crying. Though some of her

statements were answers to questions from her neighbors, they did not result from a "rational dialogue." In addition, the questions her concerned neighbors asked, such as "What happened?", were general, unlike the questions a police officer investigating a crime would ask of a child victim.

■ Finally, defendant claims that the statements of the complainant, particularly those to the Kasubas, occurred too long after the sexual assault to be excited utterances under V.R.E. 803(2). The Reporter's Notes make clear that contemporaneousness with the exciting event is not required for statements to be admissible as excited utterances. Rather, the key consideration is the condition of the declarant.

> The exception for present sense impressions, contained in Rule 803(1), relies for trustworthiness on the contemporaneousness of the event and the statement. Thus, the statement must have been made while the event was going on or "immediately thereafter"—on the assumption that there is no time for fabrication in such circumstances. That for excited utterance, found in Rule 803(2), relies on the exciting quality of the event. The statement must thus have been made while the declarant's state of excitement continued, on the theory that his mental condition prevents fabrication.

Reporter's Notes, V.R.E. 803.

The complainant's statements were made while she was in a highly excited, agitated state. It was shortly after the discovery that defendant had returned to her apartment and the complainant's ensuing hysteria that she told Mrs. Kasuba defendant had raped her. The trial court correctly admitted the statements of the complainant to the Martoccis and the Kasubas as excited utterances, admissible under V.R.E. 803(2).

■ Defendant next claims that the trial judge intervened excessively on behalf of the State when he asked Donna Kasuba whether the complainant was still "excited" at the time she stated that she had been raped, giving the jury the impression that the court favored the prosecution.

Defendant's argument is without merit. He relies solely on *United States* v. *Singer*, 710 F.2d 431 (8th Cir. 1983), to support his claim. That case involved extensive interventions by the trial judge, including a comment to the jury that the court was helping

the Government to try its case. *Id.* at 433. Here, by contrast, the trial judge asked only two questions:

> Would you—in your opinion was [the complainant] still excited at this time?
>
> . . . .
>
> Upset?

These questions do not constitute excessive intervention by the court and would not lead the jury to believe the judge favored the prosecution.

V.R.E. 614(b) provides that "[t]he court may interrogate witnesses, whether called by itself or by a party," which is precisely what the court did here. There was no error.

■ Defendant raises as error the refusal of the trial court to order the State to turn over to the defendant copies of entries complainant wrote in her diary concerning the sexual assault.* The State and defense counsel learned of complainant's diary entries at her deposition. Defense counsel requested copies of the diary entries relating to the sexual assault. The complainant brought the diary to the prosecutor but strongly opposed permitting the defense to see any of the diary entries. In response to a motion to compel discovery, the State filed a motion for a protective order, arguing that the diary entries were private, protected by the Rape Shield Law, 13 V.S.A. § 3255. The trial court agreed and denied the motion to compel on the grounds that the diary entries would be inadmissible at trial. Defendant claims this error denied him the opportunity to discover material possibly helpful to his defense, and deprived him of a fair trial as provided in Chapter 1, Article 10 of the Vermont Constitution and the Sixth Amendment to the United States Constitution. V.R.Cr.P. 16(a)(1) provides that the prosecutor must

> [d]isclose to defendant's attorney as soon as possible the names and addresses of all witnesses then known to him, and permit defendant's attorney to inspect and copy or photograph their relevant written or recorded statements, within the prosecuting attorney's possession or control.

---

* The State argues that the defendant's failure to raise this issue in his motion for a new trial constitutes a waiver, but cites no more authority for the contention than did the defendant in *State* v. *Connolly*, 133 Vt. 565, 350 A.2d 364 (1975).

The State has a continuing duty to disclose relevant material discovered after initial compliance with a discovery request. V.R.Cr.P. 16.2(b).

Here, the defense attorney made a specific request for written statements by the complainant, the State's key witness. There is no claim on appeal that the diary entries sought by defendant are protected from discovery by the Rape Shield Law or by any other statutory privilege. Contrast *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 107 S. Ct. 989 (1987) (defendant entitled to have trial court review file of state agency relating to abuse of his daughter to determine whether file contained information material to defense; according to statute, file is confidential but may be released to courts). The State asserts on appeal that compliance with this discovery request would have been an unwarranted invasion of the complainant's privacy. While we understand the State's and the trial court's reluctance to allow any further violation of the complainant's privacy, we cannot conclude that her privacy rights override defendant's right under V.R.Cr.P. 16(a) and 16.2(b) to her statements in her diary regarding the sexual assault. Consequently, we find that the State was obliged to comply with defendant's request for copies of the relevant diary entries.

The standard for reversing a conviction on appeal on the grounds that the prosecutor did not comply with Rule 16 is whether or not prejudice is shown. *State* v. *Bevins*, 140 Vt. 415, 418, 439 A.2d 271, 272 (1981) (citing *State* v. *Connarn*, 138 Vt. 272, 273, 413 A.2d 812, 814 (1980), and *State* v. *Evans*, 134 Vt. 189, 192, 353 A.2d 363, 365 (1976)). Because the diary entries have not been disclosed, it is impossible for defendant to demonstrate or us to find whether or not he was prejudiced. We do know that the entries related to the crucial issue in the trial, the occurrence of the sexual assault. This situation is similar to the dilemma that faced the court in *United States* v. *Bryant*, 439 F.2d 642 (D.C. Cir. 1971), involving a tape recording of an alleged drug deal, made by narcotics agents and lost before trial. The court said:

> We have no idea what may have been on the tape. For all we know, the tape would have corroborated Agent Pope's story perfectly; or, for all we know, it might have completely undercut the Government's case. There is not simply "substan-

tial room for doubt," but room for nothing except doubt as to the effect of disclosure.

*Id.* at 648. Since we are unable to determine whether defendant was prejudiced by the trial court's erroneous ruling that the State could withhold a prior statement of its key witness, we remand this case. We direct the court to grant defendant's motion to compel discovery of the relevant diary entries. If the court concludes the diary entries contained information that probably would have changed the outcome of the case, the court must order a new trial upon motion of defense counsel. If not, or if the nondisclosure was harmless beyond a reasonable doubt, the court may reinstate defendant's convictions. See *Ritchie*, 480 U.S. at 58, 107 S. Ct. at 1002.

 Lastly, defendant claims that the trial court erred by failing to require the State to specify which entry of complainant's apartment it relied upon for the felony trespass charge and by failing to instruct the jury that all the jurors must agree on the entry that constituted the trespass charge. He claims this deprived him of his right to a unanimous verdict, guaranteed by Chapter I, Article 10 of the Vermont Constitution. There were no such errors.

The State made it very clear in its closing remarks to the jury that it relied on the re-entry of defendant into the complainant's apartment, after he had been once told to leave by the police, as the basis for the trespass charge. As we recognized in *State v. Bonilla*, 144 Vt. 411, 414, 477 A.2d 983, 985 (1984), the State is "required to select the particular act upon which it relies 'to make good the allegation of the information.' " (quoting *People v. Alva*, 90 Cal. App. 3d 418, 424, 153 Cal. Rptr. 644, 647 (1979)). The State did precisely that in this case.

Given the State's specification of the entry on which it relied for the trespass charge and the court's instruction that the verdict must be unanimous, there was no violation of Chapter I, Article 10 of the Vermont Constitution.

*Remanded for further proceedings relative to the complainant's diary entries consistent with this opinion.*