In Re: Geno Glover, No. 281-03 CnC (Norton, J., Apr. 22, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

Chittenden County, ss.:

IN RE: GENO GLOVER

ENTRY

Petitioner Geno Glover is serving a 6- to 15-year sentence for two convictions of aggravated domestic assault and one conviction of obstruction of justice. He seeks post-conviction relief based on alleged ineffective assistance of counsel. Glover argues that his trial counsel's lack of objections to hearsay evidence, strategic decision to call Glover's wife as a defense witness, failure to file an appeal, and various other errors constituted deficient representation in violation of his Sixth Amendment rights to counsel. Glover has filed a motion for summary judgment based on all of his ineffective assistance claims. The State has filed a cross-motion for summary judgment on all claims except that regarding the trial counsel's failure to file an appeal, over which the parties have a factual dispute.

Summary judgment is appropriate where a party demonstrates that there is no genuine issue as to any material fact and the party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). The facts in this case are mostly based on the trial record and are largely undisputed.

Glover was convicted in a jury trial where he was represented by Attorney Harley Brown. The State alleged that on April 21, 2000, Glover struck his wife, Bonny Glover, with a tire iron in violation of 13 V.S.A. § 1043(a)(2) (first-degree aggravated domestic assault with a deadly weapon) and § 1044(a)(2) (second-degree aggravated domestic assault with a prior conviction for domestic assault). The State also alleged that Glover had obstructed justice in violation of § 3015 for attempting to influence a witness's testimony. Much of the State's evidence was in the form of statements that Bonny made to her daughter, Jessica Williams, and to Burlington Police Officer Daniel Merchand. The State also produced photographs showing Bonny's numerous bruises.

The statements to Williams occurred late in the evening on April 29, 2000. Williams testified that Bonny came to her residence and told her to "hurry up and close the door because her and Geno got in an argument." Williams also testified that Bonny told her that Glover had thrown an ashtray on her and "said he was going to urinate on her." Bonny also told Williams to call the police, which she did. Williams testified that Bonny also told her about an earlier incident where Glover had hit her with crowbar. Williams testified that her mother was "very scared" at the time and that she "didn't understand her" at first until she calmed down a little bit.

Before the trial, the court stated that it was inclined to admit Bonny's out-of-court statements to Williams under the excited utterance exception to the hearsay rule. Attorney Brown objected at that time but did not re-raise his objection at trial when Williams testified.

Williams testified that she went with Bonny to the police department that evening, where Bonny gave a sworn statement to Officer Merchand and another police officer took photographs of Bonny's bruises. Officer Merchand testified at trial about how he determined the date at which the crowbar assault took place. He also testified that Bonny identified the crowbar that Glover allegedly used in the assault.

At the beginning of the second day of trial, the court addressed an issue concerning the State's inclusion of charges for both first-degree domestic assault, 13 V.S.A. § 1043, and second-degree domestic assault, id. § 1044. Attorney Brown objected to the double charge, arguing that it was not permitted under State v. Ritter, 167 Vt. 632 (1998) (mem.). The court made a tentative ruling that the double charge was permissible but invited Attorney Brown to renew his objection and stated that it would review the

Ritter decision more thoroughly as it prepared the charge. Neither Attorney Brown or the court addressed the issue again.

Also before the second day of trial, Bonny indicated to the state's attorney that she wished to recant her prior statements. The state's attorney therefore decided not to call her to the stand and indicated that it would introduce Bonny's prior statements should Glover call her as a witness. Attorney Brown, in consultation with Glover, decided to call Bonny to the stand so that she could explain the bruises in the photographs. Attorney Brown explained to Glover the risks of calling Bonny to the stand, telling him that the State would "attempt to establish that her prior statements and sworn testimony were the truth, and that she had changed her story to benefit him out of fear or love." The only other way to explain the situation, according to Attorney Brown, was to put Glover himself on the stand.

When the state's attorney cross-examined Bonny, she moved to introduce Bonny's statement to Officer Merchand and her testimony at a previous bail hearing into evidence. The bail hearing testimony included similar statements regarding the assault. The court admitted both statements into evidence and instructed the jury to consider them as substantive evidence.

The State called Officer Merchand back to the stand as a rebuttal witness after Glover rested his defense. The State elicited testimony regarding a statement from Glover that he wished to blow up the van in which he and Bonny had been living. While the State was eliciting this testimony, Officer Merchand described a post-arrest incident where Officer Merchand attempted to interview Glover and Glover invoked his Miranda right to an attorney. The exchange was as follows:

> Prosecution: Okay. Where was [Glover] when you spoke to him?
>
> Merchand: He was in the cell. I took him out of the cell, at which point I asked him if he wanted to speak to me. I read him Miranda, and he advised he wanted to talk to an attorney, at which point I stopped questioning.

The jury returned a guilty verdict, and the court entered judgment against Glover. Glover states that on three occasions he asked Attorney Brown to file an appeal. Attorney Brown said that Glover never requested an appeal and he did not file one.

In order to prevail on his ineffective assistance claims, Glover must prove by a preponderance of the evidence that (1) Attorney Brown's representation fell below an

3

objective standard of attorney performance informed by prevailing professional norms and (2) there is a reasonable probability that, but for Attorney Brown's errors, the proceedings would have resulted in a different outcome. In re Grega, 175 Vt. 631, 632–33 (2003) (mem.).

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

In re Pernicka, 147 Vt. 180, 183 (1986). With respect to the "prejudice" prong, a "'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" In re Miller, 168 Vt. 583, 584 (1998) (mem.) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).

The court first turns to Attorney Brown's failure to object to hearsay statements that the State introduced through Williams's testimony. The State argues that these statements fell into the excited utterance hearsay exception, which covers statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." V.R.E. 803(2). In order for this exception to apply, a trial court must find "that the declarant had no time to reflect before making the statement in question." Reporter's Notes, V.R.E. 803. The statement, however, need not be contemporaneous with the event causing a declarant's excited state. Rather, a declarant need only be in a "'highly excited, agitated state' sufficient to suspend [the declarant's] powers of reflection and fabrication." In re Estate of Peters, 171 Vt. 381, 391–92 (2000) (quoting State v. Shaw, 149 Vt. 275, 281 (1987)). In Peters, for example, the declarant's out-of-court statement occurred three hours after a sexual assault, but the declarant's condition—"crying and rocking back and forth as she repeatedly said 'I can't believe he raped me'"—provided enough of a basis for the trial court to determine she was still "under the influence of the startling event." Id. at 392.

Here, before the beginning of the trial, the trial court briefly addressed whether Bonny's statements to Williams were excited utterances. Attorney Brown argued at that time that the statements were not excited utterances because the crowbar incident had actually occurred eight days before Bonny arrived at Williams's apartment. But the court

4

focused on Bonny's condition at the time she made the statements. Bonny was excited at that time because of a recent fight with Glover during which he dumped an ashtray on her. Bonny had also asked her daughter to call the police. These facts suffice to show that Bonny was in a highly excited, agitated state. The fact that an earlier event—the one she made statements about—was not the event that caused her excitement was not relevant. The excited utterance exception requires the statement be "in reaction to the event or condition" causing a declarant's stress; it need not be about the event or condition. State v. Solomon, 144 Vt. 269, 272 (1984). Although courts in some jurisdictions require that "the substance of the assertion relate to the exciting event," McCormick on Evidence § 297, at 707 (E. Cleary 2d ed. 1972), Vermont courts have not adopted this rule. Thus, the court correctly found before it took evidence that the out-of-court statements were admissible under the excited utterance hearsay exception.

The judge offered Attorney Brown an opportunity to renew his objection at trial, but Williams's testimony regarding the out-of-court statements was, if anything, more favorable to the court's pretrial ruling. Williams testified that when she opened the door, Bonny told her "to hurry up and close the door because her and Geno got in an argument." Williams also testified that Bonny told her that Glover had thrown an ashtray on her and "said he was going to urinate on her." These facts supported the court's determination that Bonny was in an excited state. Attorney Brown was therefore reasonable in not renewing an objection, and his failure to do so made no difference to the outcome because Bonny's statement fell within the excited utterance exception.

The court is not similarly persuaded that Officer Merchand's testimony regarding Bonny's out-of-court statements fell within the excited utterance exception. Officer Merchand testified about statements that Bonny made when he arrived at Williams's residence. These statements included the fact that Glover had assaulted her a few nights earlier and details surrounding the date of the assault. Officer Merchand provided no evidence, however, to suggest that Bonny was excited at the time she made these statements. Bonny made these statements both at Williams's apartment and later at the police department. By the time Officer Merchand arrived at the apartment, Bonny may not have been in the same excited state as when she first arrived and made the statements to Williams. These statements were not excited utterances, and Attorney Brown's failure to object was an error for which the court finds no reasonable, strategic basis.

Nevertheless, the State argues that this error did not affect the outcome of Glover's trial because Officer Merchand's testimony was merely cumulative of Williams's testimony. The court agrees. Officer Merchand offered limited testimony regarding Bonny's statements and did not delve into the nature of the assault. He merely repeated statements regarding the date of the prior assault and the fact that Bonny had identified the crowbar that Glover used in the assault. Given that Williams's testimony provided details that were similarly incriminating, Officer Merchand's hearsay evidence does not undermine the court's confidence in the outcome of the trial.

Glover also makes the point that Williams's testimony regarding Bonny's statement that Glover had thrown an ashtray at her was evidence of an un-charged assault. Because the ashtray throwing constituted a separate assault, he argues, the evidence was not admissible at trial under V.R.Cr.P. 26(c) without advanced notice. Attorney Brown did not object to this testimony on these grounds, and Glover argues that this lack of objection arose to ineffective assistance.

The court doubts that the ashtray testimony falls within the purview of Rule 26(c), which is intended for character evidence and prior crimes used for impeachment. The evidence here was relevant only in demonstrating Bonny's excited state, not in demonstrating Glover's bad character or in impeaching his testimony. Even if the ashtray testimony does fall within Rule 26(c), however, Glover fails to demonstrate how it affected the outcome of this case. The Vermont Supreme Court has held that statements that "were ancillary to the incident at issue, and not central to either the State's pro-secution or the defense's theory of the case" amount to harmless error, even if the prosecution failed to abide by the Rule 26(c) notice provisions. State v. Muscari, 174 Vt. 101, 118 (2002). The lack of Attorney Brown's objection to this evidence therefore does not undermine the court's confidence in the outcome of this case.

Glover next argues that Attorney Brown's decision to call Bonny to the stand was ineffective assistance. The State decided not to call Bonny as its witness because she had decided to recant her earlier statements regarding the assault. The State advised the court that should Glover call her to the stand, it would move to admit Bonny's prior testimony regarding the alleged assault as inconsistent statements under V.R.E. 801(d)(1)(A). When Attorney Brown called Bonny as a witness, the State was able to introduce Bonny's prior statements regarding the assault. Glover now argues that his counsel's decision unreasonably allowed the State to introduce damning evidence regarding the assault.

6

The court reiterates that, with ineffective assistance claims, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." In re Pernicka, 147 Vt. 180, 183 (1986). This presumption requires the court to exchange its hindsight panorama for a view that best reconstructs what a reasonable advocate in Attorney Brown's position at the time would have been thinking.

The State has presented evidence, through an affidavit by Attorney Brown, that the decision to call Bonny was made at Glover's request. Attorney Brown believed that Glover's request was reasonable, especially as Bonny's testimony could explain the bruises shown in photographs that police took when she was at the police department. Attorney Brown believed this evidence was difficult to explain without Bonny's testimony that she had fallen, rather than that the bruises were the result of an assault. He also stated that he discussed the risks of calling Bonny, especially the risk that the State would "attempt to establish that her prior statements and sworn testimony were the truth, and that she had changed her story to benefit him out of fear or love."

Given the circumstances, the court holds that Attorney Brown's decision to call Bonny to the stand was within his wide range of reasonableness. Attorney Brown was facing a situation where the jury had seen photos of severe bruises on Bonny's body and had heard statements that Bonny made to her daughter and the police regarding a prior assault causing the bruises. Although there were risks of the jury hearing more statements to that effect, Attorney Brown had to weigh those risks against the jury either (1) hearing no explanation at all for the State's evidence or (2) putting Glover himself on the stand and opening up the door for the State to introduce potentially damning evidence to impeach his credibility.[1] In light of these circumstances, Attorney Brown's decision was strategically defensible.

Glover also raises the point that certain prior statements which the State introduced when Bonny was on the stand did not fall under V.R.E. 801(d)(1)(A). Specifically, the State introduced the sworn statement that Bonny gave to Officer

---

[1] Glover ultimately did take the stand against Attorney Brown's advice. But at the time Attorney Brown called Bonny to the stand, he could not have known whether Glover would insist on taking the stand, so he still had to weigh the risks of having Bonny testify against the risks of Glover testifying.

Merchand at the police station. This statement could not be admitted under Rule 801(d)(1)(A) because Bonny did not offer it at a trial or hearing and was not subject to cross-examination when she made it. Nevertheless, the trial court instructed the jury that it should regard this statement as substantive evidence, rather than as impeachment evidence under V.R.E. 613. Glover argues that Attorney Brown's failure to object to this portion of the charge constituted ineffective assistance.

The trial court's instructions were indeed improper, as Bonny's statement should have been considered only as impeachment evidence under V.R.E. 613. Nevertheless, a defense counsel's failure to object to certain characterizations of evidence does not amount to ineffective assistance where such an objection would not have altered the ultimate outcome, especially in light of the other evidence. See, e.g., In re Cohen, 161 Vt. 432, 437 (1994) (holding that defense counsel's failure to object to state's attorney's improper remarks in closing argument did not affect outcome of trial). Here, had Attorney Brown objected, the most he would have gained was an instruction that the jury must consider Bonny's prior statement, unlike her bail hearing testimony, only as impeachment evidence. The court doubts that the jury would have given much weight to such an instruction in light of the fact that Bonny's bail hearing testimony was substantive evidence that revealed substantially more information regarding the assault than the sworn statement to Officer Merchand. Even if the jury had completely ignored the statement, it would have still been able to consider Bonny's bail hearing testimony under V.R.E. 801(d)(1)(A). Thus Attorney Brown's failure to object did not prejudice the outcome of Glover's trial.

Next, Glover argues that Attorney Brown's failed to object to a witness's comment on Glover's exercise of his Miranda right to cease an interrogation until counsel was present. Generally, the use of a defendant's post-arrest silence to impeach the defendant's credibility is violation of the defendant's Due Process rights. Doyle v. United States, 426 U.S. 610, 619 (1976); State v. Voorheis, 176 Vt. 265, 270 (2004). A mere mentioning of a defendant's exercise of Miranda rights, however, is not an exploitation of such exercise. Voorheis, 176 Vt. at 270–71.

Here, the prosecution did not attempt to exploit the fact that Glover requested an attorney and ceased the interview. Officer Merchand's mention of this fact was merely incidental to the witness's answers to a line of questioning regarding Glover's comment that he wished to blow up the van in which he and Bonny had been living. There was no

violation of Glover's Due Process rights. Moreover, Attorney Brown's failure to object was strategically defensible given that he had no likelihood of succeeding and an objection would have likely brought even more attention to Glover's silence, thereby highlighting the fact to the jury.

Finally, Glover argues that Attorney Brown was ineffective because he did not renew an objection to the State's inclusion of charges for both first-degree domestic assault, 13 V.S.A. § 1043; and second-degree domestic assault, id. § 1044. Glover argues that such an objection would have been successful because, under State v. Ritter, 167 Vt. 632 (1998), the legislature did not intend to criminalize the same conduct under both provisions. Attorney Brown raised this issue before the court but failed to renew it later at trial with a formal motion after the trial judge tentatively overruled the objection.

By raising the matter and securing a tentative ruling by the trial court, Attorney Brown properly preserved this issue for appeal. The rules regarding preservation of issues for appeal do not require formal exceptions. Rather, "it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor." V.R.Cr.P. 51; see also State v. Ben-Mont Corp., 163 Vt. 53, 61 (1994) ("To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it."). Attorney Brown plainly made known to the trial court that he felt Ritter prevented double charging in this case, and the court made its determination having received a fair opportunity to consider the issue. Even though the court invited Attorney Brown to re-raise the issue later at trial, Attorney Brown did not need to do so in order to preserve the issue. Moreover, his failure to do so falls within a wide range of reasonable conduct on the part of a defense counsel. Given the trial court's reluctance to rule in Attorney Brown's favor on a legal point that was questionable to begin with,[2] Attorney Brown

---

[2] The court disagrees with Glover's argument that Ritter prohibits the double charge in this case. Ritter addressed a situation where a defendant was charged under separate counts for second-degree aggravated domestic assault—once under 13 V.S.A. § 1044(a)(1) (requiring violation of specific conditions of criminal court order) and once under § 1044(a)(2) (requiring a second or subsequent offense of domestic assault)—for a single incident. The Court held that the two offenses were not the same and thus the charge did not violate the Double Jeopardy Clause of the Fifth Amendment under Blockburger v. United States, 284 U.S. 299, 304 (1932). Ritter,

could have reasonably decided that re-raising the point would be a waste of the court's time.

The only remaining issue concerns Attorney Brown's failure to appeal. The court's task on a post-conviction relief motion regarding ineffectiveness of counsel in pursuing an appeal is "merely to decide if an appeal would have been patently frivolous. If petitioner had a prayer of a chance of success, post-conviction relief should [be] granted and an appeal permitted to the Supreme Court." In re Savo, 139 Vt. 527, 529–30 (1981) (per curiam). If a petitioner, however, knowingly and intelligently waived an appeal, then the petitioner has no claim for ineffectiveness of counsel. Id. at 529. Here, Glover's appeal would not be patently frivolous considering some of the legal claims raised in this proceeding. But because there is a factual dispute as to whether Glover

---

167 Vt. at 633. Nevertheless, the Court held that because defining separate offenses under § 1044(a) would lead to absurd results, the Legislature could not have intended to charge a defendant under the two crimes for a single offense. Id. In particular, the Court found that the purpose of § 1044(a) was to enhance the punishment for domestic assault where certain aggravating factors were present. Id. But the Court did not believe that the legislature intended to double the penalty where there were two aggravating factors under the same subsection occurring at the same time, especially considering the likelihood of overlap between the two aggravating factors. Id. at 633–32.

In this case, there is not the same likelihood of overlap between the aggravating factors for first-degree domestic assault and those for second-degree domestic assault. The factors for second-degree domestic assault—either violating specific conditions of a criminal court order or committing a second or subsequent domestic assault offense—have little relation to the aggravating factors for first-degree domestic assault, which address serious bodily injury, the use of a deadly weapon, and prior convictions for aggravated domestic assault. See §§ 1043–1044. It is entirely reasonable to assume that the legislature intended to enhance penalties twice should a defendant, for instance, both violate a criminal court order and do so with a deadly weapon. This case provides similar circumstances, as Glover was convicted of both using a deadly weapon (first-degree domestic assault) and committing a domestic assault after having been convicted of an earlier domestic assault (second-degree domestic assault). The legislature has not expressed any intent that Glover's actions should not require separate punishment for each of these two aggravating factors.

waived his right to an appeal, this issue is not appropriate for summary judgment, as the State admits in its summary judgment motion. The court will therefore proceed to hear this issue on the merits.

## ORDER

The State's motion for summary judgment is GRANTED. Glover's motion for summary judgment is DENIED.


Dated at Burlington, Vermont, April 22, 2005.


_____/s/_____

Richard W. Norton    Judge